No. 2595.

WILLIAM WHITFORD v. THE STATE.

FORMER CONVICTION—"CARVING OFFENSES."—CONSPIRACY TO COMMIT
BURGLARY is a distinct offense created by the statutes of this State, and
it is complete when two or more persons have positively agreed between
themselves to commit burglary, though the burglary be never committed.
If a burglary and a conspiracy to commit burglary involve the same
transaction, the two offenses of burglary and conspiracy to commit bur-
glary may be carved out of the same transaction, and a conviction for
the one will not bar a prosecution for the other. See the opinion in ex-
tenso for an exhaustive discussion of the doctrine.

APPEAL from the District Court of Bexar. Tried below be-
fore the Hon. G. H. Noonan.

The indictment in this case jointly charged the appellant and
William Neiderluck alias William Miller, Edward Levi and
Frank Hawkins, with the offense of conspiracy to commit the
burglary of the eating house or restaurant of one Tom Wing, in
Bexar county, Texas, on the night of the third day of July, 1886.
The separate trial of the appellant resulted in his conviction,
and his punishment was assessed at a term of four years in the
penitentiary.

Beginning on page 38 of the twenty-third volume of these
Reports, will be found the report of the case of Neiderluck alias
Miller v. The State, which was an appeal from a conviction for
the burglary of the restaurant of Tom Wing, that transaction
being the same out of which this prosecution was carved. A full
statement of the evidence adduced upon the trial of the said
Neiderluck is set out in that report. The evidence adduced upon
this trial, so far as it relates to the burglary, is identically the
same as that elicited upon the said trial of Neiderluck. This re-
port will, therefore, embrace only such evidence as was delivered
upon this trial and was not upon the trial of Neiderluck. Such
additional evidence comprises the testimony of the conspirator
Levi, who appeared as a witness for the State, and testified di-
rectly to the acts of conspiracy.

He testified that his name was Edgar Levi, but that he was
the person described in the indictment as Edward Levi. He was

employed as a hand in the restaurant of Tom Wing at the time alleged in the indictment, and had then been in Wing's service about three weeks. He then knew the defendant and had known him about three years. He formed Neiderluck's (or Miller as he was known) acquaintance a day or two before the date alleged in the indictment. Four or five days before the date of the alleged offense, the witness met the defendant on the Military Plaza, in San Antonio, and, after some talk, asked him if he "wanted to turn a trick." Defendant replied that he was "strapped," needed money, and was ready for anything. Witness then told him that Tom Wing, the Chinaman for whom he was working, had a trunk in the restaurant which contained between three and five thousand dollars, and that the trick he referred to was to get that money. Witness explained to defendant the position of the trunk in the house, and told him that he (witness) slept on the gallery. Defendant agreed to help the witness get the money, and witness suggested to him to do the work that night. The defendant replied that it could not be done that night, as he would have to get a gun, and somebody else to help him. Witness replied that a gun was not needed, as he had chloroform which, however, he did not know how to use. Defendant then said that he would get some one to assist who understood the use of chloroform, but that he would also get a gun to use in case of interference.

Witness next met defendant on the Houston street bridge, near the restaurant, where he and Neiderluck or Miller were taking a view of the restaurant and its surroundings. Witness suggested to them to go into the restaurant and take dinner, so that they might get a correct idea of the interior arrangement of the establishment. Defendant went in and got dinner, and, after he had eaten, witness took him into the Chinaman's room and showed him the trunk and the interior arrangements of that room. About nine o'clock, on the night of July 3, 1886, the witness, defendant, Neiderluck and Charley Hyatt met by appointment, near an old blacksmith shop, at the corner of Acequia street. None of the parties then knew or suspected that Hyatt was "standing in" with the officers. It was agreed that witness and Hyatt, who was also an employe of Wing, would return to the restaurant and await the arrival of defendant and Neiderluck. Hyatt pretended to want to do the work at once, but defendant and Neiderluck insisted that they must procure weapons to resist any possible attempt to arrest them if discovered.

Neiderluck claimed to know how to use chloroform, and it was agreed that he should use it. Witness told defendant and Neiderluck that Wing did not always lock the front door, but sometimes closed it and braced it with a chair, and that when so closed it was easily opened. It was agreed that defendant and Neiderluck should first try the front door, and if they failed to get in they were to come to the back gallery, on which witness and Hyatt had their beds, and they (witness and Hyatt) were to admit them through the back door. The agreement further provided that the four parties named were to go into Wing's room together, chloroform Wing, rob the trunk, and then take the money to a point near the railroad and divide it equally. Witness and Hyatt went to bed on the back gallery, as agreed, and, at about two o'clock on that morning, defendant and Neiderluck came to the said back gallery. Witness and Hyatt got up, and witness led the party into the restaurant through the back door, which he had left open. Witness and Neiderluck each had a pocket handkerchief saturated with chloroform. Neiderluck became afraid to use his handkerchief, and witness then spread the one he had over Tom Wing's face. About this time defendant and Neiderluck started towards the dining room, and witness, hearing somebody step on the gallery, became alarmed and started to run, but ran into the clutches of Policeman Fitzhenry. Wing, though frightened and dazed on being aroused, managed to get a light, and the officers, placing the witness in front of them, marched into the room where defendant and Neiderluck then were. Witness, as he passed through the door, called to defendant and Neiderluck: "Boys, don't shoot; they have got me in front, and you will hurt me." Witness conceived the idea of getting the Chinaman's money as soon as he ascertained that he had it. He had tried, but failed, to get others to join him in the robbery before he proposed it to defendant.

*Gerald Griffin,* for the appellant.

*W. L. Davidson,* Assistant Attorney General, for the State.

HURT, JUDGE. Whitford, Neiderluck alias Miller, Edward Levi and Frank Hawkins were jointly indicted for conspiracy to commit burglary. Appellant Whitford was tried alone, a severance being had, was convicted and appeals to this court. In bar to this prosecution appellant interposed a plea of conviction

for the burglary. Upon motion of the district attorney this plea was stricken out, and appellant excepted.

Was the plea a bar, conceding it to be true, to the prosecution for conspiracy? Appellant was convicted of the substantive offense, to wit, burglary as a principal, not as an accomplice. Being placed on trial for conspiracy to commit the same burglary, will the conviction of the burglary as a principal bar the prosecution for the conspiracy? We have examined all the authorities accessible to us at this place, but have failed to find in any work the precise question presented or discussed.

The doctrine of merger does not solve the question, but the doctrine of "carving" does to some extent aid in its solution. Says Mr. Bishop: "There is a difference between a crime and a criminal transaction. A criminal transaction may be defined to be an act or series of acts proceeding from one wrongful impulse of the will of such a nature that one or more of them will be indictable.    *    *    *    · In reason there may be any number of distinct crimes in a single criminal transaction. This comes from the fact that the words of our language being limited, while the transactions of life may almost be termed infinite in variety, and the lines to be drawn around specific offenses being necessarily incomparably more limited than the words, it is impossible there should be an exact outline of crime whose circumference shall exactly coincide with every criminal transaction. The consequence is that the law does, what it must, declare this combination a fact and intent to be indictable, then another combination, and another, and so on, until it is supposed to have proceeded far enough, when it stops. And when this is done, it is impossible the inhibitions should be so distinct that no one shall embrace anything forbidden by another. Therefore it is established doctrine that more than one offense may be committed by a man in one transaction. Whether a prosecution for one crime carved out of the one transaction should be held to bar an indictment for another crime carved out of the same transaction is a different question; but the authorities appear to be that in some circumstances it will be, and in others it will not."

Now, in harmony with these principles our code has carved two offenses from this one criminal transaction. It has declared that the offense of conspiracy is complete if two or more persons positively agree between themselves to commit burglary,

though the burglary is not committed. (Penal Code, arts. 800, 801, 802, 804.)

Under what circumstances will a conviction for one cause carved out of one transaction bar an indictment for another, when carved out of the same criminal transaction? Now, if A steals a horse and saddle at the same time, a conviction for the one bars a prosecution for the other. This is well settled and plain sailing. But suppose A, B and C, conspire to steal three horses from the same stable and ride them out of the city, and with a view of carrying out this criminal transaction they steal three saddles the night before the theft of the horses, certainly a conviction for the theft of the horses would not bar an indictment for the theft of the saddles; and this would be so, though the theft of the saddles was a part of the same criminal transaction.

On the other hand let us submit an illustration. Suppose appellant had been convicted of the burglary as an accomplice, by proof of the very facts which make up the conspiracy, would such a conviction bar an indictment for the burglary? An accomplice is one who agrees with the principal offender to aid him in committing the offense, though he may not have given him such aid.

A, B and C enter into a positive agreement to aid one another in murdering E. A commits the murder; B and C are accomplices, the fact that the agreement was positive, and that each would aid in the commission of the offense would not alter the case; all not present would be accomplices. But to convict B and C as accomplices, the State would have to rely upon the facts constituting the conspiracy. This would be so in the supposed case, but not in all cases by any means, for quite a number of acts may constitute the actor an accomplice which would not technically constitute "a conspiracy." We would hold that, in the supposed case, a conviction for the substantive offense as an accomplice would bar an indictment for the conspiracy. Upon what principle? Obviously upon the principle that a party can not be constitutionally convicted twice for the same acts and intent.

The case in hand does not occupy this attitude. Appellant was convicted of the burglary as a principal offender, and while the conspiracy may have been adduced in evidence in order to establish the burglary, and in connection with other facts to prove the guilt of appellant as a principal, yet this would not be a conviction upon the acts constituting the conspiracy. For

upon trial for an offense, evidences of other offenses is very frequently and justly received, and because proof of other offenses has been drawn upon to aid in convicting of a certain crime, this fact does not bar a prosecution for the other offenses.

We are of opinion that under the facts of this case, to wit, that appellant was convicted as principal for the burglary, that there was no error in sustaining the district attorney's motion to strike out the plea. The indictment is good and not subject to the objection that it is duplicitous.

We find no error in the judgment, and it is affirmed.

*Affirmed.*

Opinion delivered December 14, 1887.