Steven KALISH, Appellant,

v.

The STATE of Texas, Appellee.

No. 036–83.

Court of Criminal Appeals of Texas, En Banc.

Dec. 14, 1983.

Dick DeGuerin, Houston, for appellant.

Jim Mapel, Dist. Atty., Jo Wiginton and Richard C. Stevenson, Asst. Dist. Attys., Angleton, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

CLINTON, Judge.

The Texas Speedy Trial Act, Acts 1977, 65th Leg., ch. 787, p. 1970 (the Act) inserted in Chapter 28 of our code of criminal procedure a new Article 28.061 to provide what consequences follow sustaining a motion to set aside a charging instrument for failure of the State to be ready for trial within applicable time limitations.[1] The problem presented in this cause is created by the legislative mandate that a discharge of an accused from one offense is a bar "to any further prosecution ... for any other of-

---

1. "Article 28.061. Discharge for Delay.

    If a motion to set aside an indictment information, or complaint for failure to provide a speedy trial as required by Article 32A.02 is sustained, the court shall discharge the de-fendant. A discharge under this article is a bar to any further prosecution for the offense discharged or for any other offense arising out of the same transaction."

fense *arising out of the same transaction.*"[2] We granted leave to file petition for discretionary review to determine whether the term "same transaction" was correctly construed for purposes of the Act by the court of appeals in *Kalish v. State,* 650 S.W.2d 89 (Tex.App.—Houston (14th) 1982).

The facts of this matter are reflected in an offense report made by the arresting officer, introduced by appellant, admitted without objection from the prosecution and considered by the trial court in making its ruling. We recast his report to focus on appellant, but do not materially alter the deputy's account.

Upon stopping a motor vehicle for failure to dim headlights the deputy instructed its driver to step from a four door automobile and produce his driver's license. The three remaining suspects, including appellant, were asked to get out of the vehicle. After the four suspects left the vehicle, appellant ran toward a fence on the northside of a state highway and threw two bags of white substance (later identified as Quaalude and Cocaine) over the fence. The bags were later collected by a patrolman who had been called to assist. The four suspects appeared to be intoxicated and were placed under arrest, appellant being separated from his companions and placed in a patrol unit by himself. After the automobile had been "examined," the suspects were transported to jail, and the deputy promptly prepared and filed three complaints charging appel-

lant with the offenses of public intoxication, possession of Quaalude and possession of Cocaine, respectively.[3]

Following proceedings in a justice court appellant appealed to county court for trial *de novo* of the public intoxication complaint. Subsequently, his motion to set aside that complaint was heard and granted June 24, 1980. Meanwhile the complaint for possession of cocaine ripened into an indictment alleging that offense, which was filed in the district court March 3, 1980. The district attorney filed a written announcement of ready March 10, 1980, and thereafter the State seems to have announced ready whenever the case was called.

July 2, 1980 appellant filed his plea in bar and motion to dismiss, noting that the public intoxication complaint had been dismissed and he had been discharged therefrom, and invoking Article 28.061, supra, for dismissal of and discharge from the cocaine indictment. After an evidentiary hearing August 14, the trial court rejected the plea and denied the motion.[4] Appellant's sole ground of error complained of that ruling, and within such constraint the court of appeals found that the two offenses—public intoxication and possession of cocaine—"were not of the same transaction," *Kalish v. State,* supra, at 91. Accordingly there was no error and the judgment of conviction was affirmed.[5]

2. All emphasis is supplied throughout by the writer of this opinion unless otherwise indicated.

3. Listing what was seized as evidence, the deputy included "one dollar bill with white powder substance," "one plastic bag with white powder substance," "one gold sniff spoon" and a "small bottle J & B Scotch Whiskey." His complaint for public intoxication alleged appellant was "under the influence of alcohol," but since that matter was never finally tried the record does not reveal that is the case. Indeed, in its brief the State emphasizes, "There is *no evidence* to show that Appellant's intoxicated condition was more probably caused by cocaine than it was by the liquor or the marihuana." For his part, in his motion for rehearing filed in the court of appeals, appellant says that he possessed "the *intoxicants* which caused him to be publicly intoxicated." In short, we

do not know whether appellant was then "under the influence of alcohol *or* any other substance," V.T.C.A.Penal Code, § 42.08(a).

4. The trial judge recognized and acknowledged that he was being confronted with a matter of first impression—"what is meant under Article 28.061 by the definition of the term 'transaction'"—and advanced several grounds for the ruling he ultimately made. However, our concern is more with the construction fashioned by the court of appeals, though we may allude to at least one other suggested by the trial judge.

5. To protect its judgment the State asserted in the court of appeals that the Act does not apply to appeals *de novo* to county court and that dismissal of the public intoxication complaint was not binding on the district court. Like the court below, we do not reach those contentions.

In reaching its conclusion the court of appeals opined: "The term 'same transaction' is one which has acquired a unique interpretation in Texas criminal law." It believed that the former court of appeals had "explained the term 'criminal transaction'" in *Whitford v. State,* 24 Tex.App. 489, 6 S.W. 537 (1887), much as it was recently restated in *Whitworth v. State,* 624 S.W.2d 767 (Tex.App.—Houston (14th) 1981, no petition): "A criminal transaction has been defined as an act, or a series of acts, arising from a single criminal impulse." *Id.,* at 769; *Kalish,* supra, 650 S.W.2d at 91. But then in purporting to apply that definition to find that possession of cocaine and public intoxication "were not of the same transaction," the court of appeals pointed out:

> "The two actions, though occurring at the same general time and place, constituted separate offenses and separate issues of law." *Ibid.*

With deference, that analysis is contrary to the understanding expressed by Judge Hurt as he resolved the jeopardy issue presented in *Whitford v. State,* supra.

Faced with a question of first impression, what the *Whitford* court did was to resort to the doctrine of carving for aid in its solution. In pertinent part it quoted from Mr. Bishop as follows:

> "There is a difference between a crime and a criminal transaction. A criminal transaction may be defined to be an act, or series of acts, proceeding from one wrongful impulse of the will, of such nature that one or more of them will be indictable. * * * In reason, there may be any number of distinct crimes in a single criminal transaction. * * * [6]

Therefore, it is established doctrine that more than one offense may be committed by a man in one transaction. Whether a prosecution for one crime, *carved out of the one transaction,* should be held to bar an indictment for another, *carved out of the same transaction, is a different question;* but the authorities appear to be that in some circumstances it will be, and in others it will not."

Then Judge Hurt continued:

> "Now, in harmony with these principles, our code has carved out two different offenses from this one criminal transaction. * * * Under what circumstances will a conviction for one cause, carved out of one transaction, bar an indictment for another, carved out of the same criminal transaction? Now, if A steals a horse and saddle at the same time, a conviction for the one bars a prosecution for the other. That is well settled and plain sailing. But suppose A., B., and C. conspire to steal three horses from the same stable, and ride them out of the city, and, with the view of carrying out this criminal transaction, they steal three saddles the night before the theft of the horses, certainly a conviction for the theft of the horses would not bar an indictment for the theft of the saddles; and this would be so, though the theft of the saddles, was part of the *same criminal transaction."* *Whitford,* supra, 6 S.W. at 538.

Thus, Judge Hurt clearly understood that two actions taken contemporaneously, though they constitute "separate offenses and separate issues of law," may each be part and parcel of the same criminal transaction.

---

**6.** We have elided:

"This comes from the fact that, the words of our language being limited, while the transactions of life may almost be termed infinite in variety, and the lines to be drawn around specific offenses being necessarily incomparably more limited than the words, it is impossible that there should be an exact outline of crime whose circumference shall exactly coincide with every criminal transaction. The consequence is that the law does, what it must, declare this combination of act and intent to be indictable; then another combination, and another, and so on, until it has proceeded far enough, when it stops. And when this is done it is impossible that the inhibitions should be so distinct that no one shall embrace anything forbidden by another."

From which of his works the excerpt comes is not identified by Judge Hurt. Mr. Bishop started publishing in 1856, and by 1892 presented a revised eighth edition, which we will examine *post.*

As to his definition of "criminal transaction," even Mr. Bishop soon found the phrase "proceeding from one wrongful impulse of the will" indicated too narrow a concept. For in Bishop's New Criminal Law (8th Ed.1892) pp. 469–470, the same material is restated, and under the heading "Transaction and Crime Distinguished" Mr. Bishop wrote:

"There is a difference between a crime and a criminal transaction. The latter is a series of acts proceeding from a single impulse or *connected series of impulses of the will,* such that one or more of them will be indictable. * * * " § 777, at 470.

And Mr. Bishop continued to make the point that application of the carving doctrine is "a different question"—with varied answers.

Indeed, in *Ex parte McWilliams,* 634 S.W.2d 815 (Tex.Cr.App.1980), abandoning the carving doctrine, the Court said, "Any sequence of conduct can be labelled a 'transaction' and this Court has construed the term in an inconsistent manner." *Id.,* at 824. Earlier, as the State points out, a State Bar Committee attempted to substitute a more precise term—'criminal episode' —in its place." It cites *Texas Penal Code, A Proposed Revision* (Final Draft 1970)— the "Blue Book"—§ 3.01 and accompanying Committee Comment.[7] However, the proposed definition of "criminal episode" was not adopted by the Legislature; rather it fashioned a completely different meaning. See V.T.C.A. Penal Code, § 3.01: "the repeated commission of any one offense defined in Title 7 of this code (Offenses Against Property)." The Legislature having rejected what the State sees as "a workable and consistent definition for the term 'transaction,'" we should not apply it

to achieve speedy trial objectives under the Act.

Legislative motivation for passage of the Act in 1977 was identified in *Ordunez v. Bean,* 579 S.W.2d 911, 915 (Tex.Cr.App. 1979) (Concurring Opinion): "More than a right constitutionally afforded an accused, the notion that criminal prosecutions be tried speedily is in the public interest, the rationale being that prompt disposition of pending cases and swift punishment imposed on the guilty serve to protect the citizenry," *id.,* at 917. Therefore, the Legislature directed that trial of a criminal action be given preference over trials of civil cases and that a criminal action against a detained accused be given preference over trials of other criminal actions, Article 32A.01, V.A.C.C.P.; it also mandated the prosecution to be ready for trial of a criminal action within varying prescribed time periods according to classification of the alleged offense, Article 32A.02. So strong was the motivation that the Legislature, in words of one close observer, "aimed at coercing an acceleration of the process under threat of dismissal of charges." Cohen, *Senate Bill 1043 and the Right to a Speedy Trial in Texas,* Vol. 7, No 1 American Journal of Criminal Law (March 1979) 23, at 24. It is in this light that we must determine the meaning of "same transaction" as used in Article 28.061 and other provisions of the Act.

First and foremost, it is obvious that the Legislature was aware that there might coexist "the same offense or any other offense arising out of the same transaction," Article 32A.02, § 2(a) and (c); § 4(7). That two or more offenses are separate and distinct in their elements, then, is accepted for purposes of the Act. *Rosebury v. State,* 659

---

7. Chapter 3 of the Blue Book treated "Multiple Prosecutions and Double Jeopardy." In § 3.01 the proposed definition of "criminal episode" included "all conduct, including criminal solicitation and criminal conspiracy, incident to the attempt or accomplishment of a single criminal objective, even though the harm is directed toward or inflicted upon more than one person." The committee commented:

"It is difficult to state precisely how the 'criminal episode' concept will change Texas

law since it is impossible to find a uniform definition of the term 'transaction' in the cases. However, the concept of 'criminal episode' is probably broader than the 'transaction' concept since it includes preparatory offenses such as solicitation and conspiracy and extends beyond 'one act,' or 'all acts committed at the same time and place,' or 'one act and one volition,' to all conduct directed at a single criminal objective."

S.W.2d 655 (Tex.Cr.App., 1983). The Act is not concerned with jeopardy problems, but with inducing speedy trials.

Appellant contends that Article 28.061 should be construed "to include any and all offenses, separately chargeable or not, simultaneously or serially committed." Similarly, he argued to the court of appeals:

"Both public intoxication and possession of a controlled substance are continuing offenses. Both were allegedly committed simultaneously, that is, at the same time and place, and witnessed by the same officer to have simultaneously occurred. It is thus uncontroverted that both offenses arose out of the same transaction."

In light of his argument the contention merits closer examination.

■ If the thing possessed is a controlled substance and its possessor has ingested enough of it to be found intoxicated in public, the offense of possession and the offense of public intoxication surely are of the same transaction. Here, however, the evidence fails to show that appellant was under the influence of cocaine. See note 3, *ante.* But does that failure change the identity of the transaction?

All criminal offenses involve voluntarily engaging in conduct, including an act, an omission, or possession, V.T.C.A. Penal Code, § 6.01(a), and acts are manifested by a bodily movement, *id.,* 1.07(a)(1), whereas a voluntary "act" of possession is something *distinct from both act and omission.* Section 6.01(b); *Phelps v. State,* 623 S.W.2d 936 (Tex.Cr.App.1981); see *Gorman v. State,* 634 S.W.2d 681, 685–686 (Tex.Cr.App. 1982) (Concurring Opinion). When one voluntarily engages in criminal conduct consisting of a bodily movement, generally it produces a "victim" and thus becomes a transaction.[8] That kind of criminal transaction terminates with cessation of conduct—ordinarily in a relatively brief period

of time. However, an "act" of possession is usually "victimless," and is not considered a criminal transaction until it is discerned or discovered by another, ordinarily upon arrest, search or seizure—as in, e.g., *Ex parte Rodriguez,* 560 S.W.2d 94, 96 (Tex.Cr.App. 1978); *Ex parte Adams,* 541 S.W.2d 440 (Tex.Cr.App.1976); *Gates v. State,* 100 Tex. Cr.R. 36, 271 S.W. 632 (1925); see *Ex parte Mitchell,* 571 S.W.2d 914, 915 (Tex.Cr.App. 1978).[9]

Being intoxicated is not an offense until one under the influence of alcohol or any other substance to the requisite degree *appears in a public place.* V.T.C.A. Penal Code, § 42.08(a). Though bodily movement is thus required, like a possessory offense public intoxication becomes a criminal transaction when one is found in that condition. *Dickey v. State,* 552 S.W.2d 467, 468 (Tex.Cr.App.1977) and cases discussed therein; cf. *Davis v. State,* 576 S.W.2d 378, 380, n. 2 (Tex.Cr.App.1978); see *January v. State,* 66 Tex.Cr.R. 302, 146 S.W. 555 (1912).

■ We hold that when a person is detained, placed under restraint or taken into custody by a peace officer, all such chargeable voluntary conduct in which the person was then and there engaged, constituting an offense continuing in nature, arises out of the same transaction. Accordingly, given the facts and circumstances recounted by the peace officer, we find that offense of possession of cocaine and the offense of public intoxication, being committed contemporaneously by appellant, were of the same transaction.

■ Pressed upon the Court, however, is the argument that, as the trial court indicated in overruling appellant's plea in bar and motion to dismiss, a construction of the term "same transaction" should be influenced by the fact that the Legislature fixed the times within the State must be ready for trial according to its classification of

---

8. "One's *acts* or *deeds* may be exclusively his own; his *transactions* involve the agency or participation of others." (Emphasis in original) Funk & Wagnalls Standard Handbook of Synonyms, Anatonyms & Prepositions, 423.

9. Though the carving doctrine is implicated in these cases, they are cited here to demonstrate when a possessory offense becomes a transaction.

offenses and possible punishment. Article 32A.02,[10] § 1. We must reject the argument for the simple reason that there is nothing in the Act to support it.

When the Legislature chose to treat an arrest as commencement of "a criminal action" and fashioned it to embrace "the same offense or any other offense arising out of the same transaction," it dictated that the State be ready for trial within whichever period of time was prescribed or suffer dismissal of the charging instrument, and it meant such a dismissal to bar "*any further prosecution* for the offense discharged or for *any other offense* arising out of the same transaction." Article 32A.02, § 2(a); Article 28.061, supra. Such inclusive language used by the Legislature will not allow a construction that what it really intended was to limit "same transaction" to offenses of like degree. The argument is without merit.

The ground of error should have sustained. The judgment of the court of appeals and the trial court is reversed and the indictment in Cause No. 12,467 in the trial court is ordered dismissed and further prosecution of appellant for the offense alleged therein is barred.

McCORMICK, Judge, dissenting.

Because the construction of Article 28.061 V.A.C.C.P. preferred by the majority sanctions an unconstitutional infringement on the District Court's exclusive jurisdiction over felony cases, I dissent.

The Texas Constitution specifically delineates the jurisdiction of trial courts to those criminal cases within their respective purview:

"The District Court shall have original jurisdiction in all criminal cases of the grade of felony." TEX. CONST. Art. V, Sec. 8; See also Art. 4.05, V.A.C.C.P.;

"The County Court shall have original jurisdiction of all misdemeanors of which exclusive original jurisdiction is not given to the Justice Court as the same is now or may hereafter be prescribed by law, and when the fine to be imposed shall exceed $200...." TEX. CONST. Art. V, Sec. 16; See also Art. 4.07, V.A.C.C.P.;

"Justices of the peace shall have jurisdiction in criminal matters of all cases where the penalty or fine to be imposed by law may not be more than two hundred dollars, ... and such other jurisdiction, criminal and civil, as may be provided by law, under such regulations as may be prescribed by law ...." TEX. CONST. Art. V, Sec. 19; See also Art. 4.11, V.A.C.C.P.

As construed by the majority, the dismissal provision of the Texas Speedy Trial Act offends this Constitutional scheme by purporting to authorize the county and justice of the peace courts to deny or defeat jurisdiction granted only the district court. Our Constitution gives the district court *exclusive* jurisdiction in all criminal cases of the grade of felony. *Hughes v. State,* 68 Tex.Cr.R. 548, 152 S.W. 912, 913 (Tex.Cr. App.1913). This grant of authority cannot be defeated or trenched on by a lower court lacking such jurisdiction. Where there is no jurisdiction, "the power of the court to act is as absent as if it did not exist." *Ex parte Caldwell,* 383 S.W.2d 587, 589 (Tex.Cr. App.1964). See *Ex parte Sandoval,* 167 Tex.Cr.R. 54, 318 S.W.2d 64 (Tex.Cr.App. 1958); *Ex parte Armstrong,* 110 Tex.Cr.R. 362, 8 S.W.2d 674, 675 (Tex.Cr.App.1928).

To place the District Court's exclusive jurisdiction over a valid felony indictment at the mercy of lower court dismissal under the Speedy Trial Act inverts the hierarchic system of courts provided for the Texas Constitution, supra, and countenances impermissible interference between them. This violates the very purpose and intent of

10. The trial judge expressed the view that "the Legislature probably is referring to all transactions within the same time frame, meaning if it is a Class 'C' misdemeanor that you are probably talking about everything else that falls within a Class 'C' misdemeanor. His concern was that dismissal for failure to be ready for trial of a minor misdemeanor within sixty days was not intended "to vitiate a third degree felony that falls within the 120 days." The State shares that concern.

the framers of the Constitution. As the Texas Supreme Court observed in *Morrow v. Corbin,* 112 Tex. 553, 62 S.W.2d 641, 644 (1933),

> "Since the Constitution has erected a system of both trial and appellate courts, it is obvious that it was never the purpose of the Organic Law to permit one tribunal to interfere with the lawful exercise by another of the judicial power allocated to it. It was the purpose of the framers of the Constitution to make each tribunal independent of all others in the exercise of the authority confided to it, except in so far as powers of revision or direction may be given in the Organic Law or valid statutes thereunder to appellate over trial tribunals."

See also, *French v. Hay,* 89 U.S. 250, 253, 22 Wall. 250, 253, 22 L.Ed. 857 (1875); *Cleveland v. Ward,* 116 Tex. 1, 285 S.W. 1063, 1071 (1926).

Accepting the constitutionality of the majority's construction of Article 28.061, supra, may relegate the District Court to the role of a helpless observer to the loss of its jurisdiction for circumstances it is powerless to affect, but a more real danger is that it may not. It is well settled that,

> "A district court is not authorized to exercise general supervision and control over the county court in criminal proceedings, and its power to interfere with the orderly dispatch of such business by the latter tribunal is limited to that conferred by the Constitution and statutes of our State." *Winfrey v. Chandler* [159 Tex. 220], 318 S.W.2d 59, 61 (Tex.1958).

However, under these "constitutional and statutory provisions [1], a district court has no power to stay the trial of a criminal case pending in another court *except* where necessary and appropriate to protect or enforce its own jurisdiction". Id. (emphasis added). See *Seele v. State,* 1 Tex.Civ.App. 495, 20 S.W. 946 (1892, no writ history). A construction of Art. 28.061, supra, that forces

the district court to protect its own exclusive felony jurisdiction via a writ to the county court to proceed with a trial or dismiss it within the time period for misdemeanors allowed by the Speedy Trial Act is precisely the type of interference between tribunals decried in *Morrow v. Corbin,* supra, yet invited by the majority today.

For all of the above reasons, I dissent.

TOM G. DAVIS, W.C. DAVIS and CAMPBELL, JJ., join in this dissent.

---

1. Art. 1914 V.A.C.S. provides that "Judges of the district courts may either in term time or in vacation, grant writs of mandamus, injunction, sequestration, attachment, garnishment, certiorari and supersedeas, *and all other writs necessary to enforcement of the jurisdiction of the court."*