Affirmed in Part, Reversed and Remanded in Part; Majority and Concurring
Opinions filed November 16, 2004









Affirmed in Part, Reversed and Remanded in Part;
Majority and Concurring Opinions filed November 16, 2004.

 

In The

 

Fourteenth Court of Appeals

____________

 

NOS. 14-03-00950-CR

          14-03-00951-CR

          14-03-00952-CR

          14-03-00953-CR

          14-03-00954-CR

____________

 

WILLIAM CURTIS
HENDRIX,
Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 232nd
District Court

Harris County, Texas

Trial Court Cause Nos. 955,262
through 955,266

 



 

CONCURRING 
OPINION








I fully join the majority=s holding
regarding the unanimity of the jury=s verdict as to Acontact@ in cause numbers
955,262; 955,263; 955,265; and 955,266. 
I concur in the judgment with respect to those convictions, however, to
express my view that Acontact@ and Apenetration@ are merely
alternative means of committing the same offense.  With regard to cause number 955,264, I
likewise concur with the majority=s holding that the
trial court committed charge error with respect to that cause.  Our decision is grounded upon controlling
precedent of the Texas Court of Criminal Appeals, namely, its decision in Vick
v. State, 991 S.W.2d 830 (Tex. Crim. App. 1999).  As an intermediate court, we must abide by
such precedent, but I write separately to respectfully express my doubts about
its cogency.

In Vick, the defendant was
originally charged with aggravated sexual assault by penetrating the
complainant=s female sexual organ with his sexual
organ.  Id. at 831.  The defendant was tried and acquitted of this
charge.  After the defendant was found
not guilty, the State reindicted the defendant for the aggravated sexual
assault of the same victim in the same transaction as had been alleged in the
previous indictment.  Id.  However, in the new indictment the State
alleged the defendant committed aggravated sexual assault by (1) contacting the
complainant=s female sexual organ with his sexual
organ and (2) contacting the complainant=s female sexual
organ with his mouth.  Id.  Both the trial court and the court of appeals
held the second indictment charged the defendant with the same offense for
which he already had been tried and acquitted. 
Id. at 831B32. 
The Court of Criminal Appeals, however, disagreed.  The court held the defendant had been charged
with a new and different offense in the second indictment because Aeach section [of
the statute] entails different and separate acts to commit the various,
prohibited conduct.@ 
Thus, the court opined that this Aspecificity
reflects the legislature=s intent to separately and distinctly
criminalize any act which constitutes the proscribed conduct.@  Id. at 833.

For reasons set forth below, I fear the
Court of Criminal Appeals has (1) seriously eroded the double jeopardy
protections afforded by our state and federal constitutions, (2) unjustifiably
construed the sexual assault statute differently from every other penal
statute, (3) imposed an unrealistic burden upon the State to precisely predict
and anticipate the evidence to be adduced at trial, and (4) created confusion
and uncertainty in criminal pleadings that the legislature sought to avoid by
its 1973 amendment of the Code of Criminal Procedure and its adoption of the
modern penal code.








Joinder
and Pleadings under the Common Law

A universal maxim
in the common law of England was Athat no man is to
be brought into jeopardy of his life, more than once, for the same offense.@  4 William
Blackstone, Commentaries *329. 
The ageless difficulty with this noble precept, however, is attempting
to define the parameters of an Aoffense.@

Perhaps the first test ever devised under
English common law for ascertaining the limits on an offense was the Asame evidence
test.@  Ashe v. Swenson, 397 U.S. 436, 453
(1970).  Under the Asame evidence
test,@ if substantially
the same witnesses, testimony, and evidence were used in the prosecution of two
separate and distinct criminal statutes, they were considered to be one offense
and, thus, only one conviction could be obtained.  See Byrd v. State, 235 S.W. 891, 893 (Tex.
Crim. App.
1921) (holding that where only one transaction is involved, only one conviction
can result).

An ancillary, and perhaps inevitable,
concept arising from the Asame evidence test@ was the idea of a
Acriminal
transaction.@  A Acriminal
transaction@ is Aan act, or a
series of acts, proceeding from one wrongful impulse of the will@[1] or in which there
is Aa single guilty
intent@ running through
and connecting the acts.[2]  A criminal Aoffense,@ as that term was
used in analyzing jeopardy issues, was synonymous with the phrase Acriminal
transaction.@  In
each Acriminal
transaction@ a defendant conceivably could violate
several penal statutes.[3]  








However, because the proof of these violations would
require the Asame evidence,@ (and thus proof
of the same offense) only one conviction could be obtained out of each Acriminal
transaction.@

This concept was further refined by what
became known in Texas as the Acarving doctrine.@  Under the Acarving doctrine,@ the State Acould carve but
one offense out of the transaction.@  Curtis v. State, 3 S.W. 86, 88 (Tex.
Ct. App. 1886).  Thus, the prosecutor was
permitted to carve as large a statutory violation out of a single transaction
as he could, but he could Acut only once.@  Staples v. State, 175 S.W. 1056, 1058
(Tex. Crim. App. 1915).[4]  For jeopardy purposes, therefore, an Aoffense@ tended to have
temporal and spatial limits.  For
example, if the defendant stole two horses from different owners but the horses
were stolen at the same time and place, a conviction for the theft of one horse
would bar prosecution for the theft of the other horse because the State could
not Apunish twice for
the same offense.@  See
Wright v. State, 40 S.W. 491, 492 (Tex. Crim. App. 1897).

A bewildering phenomenon arose in that the
term Aoffense@ had two distinct
and entirely different meanings based on its context.  An Aoffense@ was sometimes
used to mean the violation of a criminal statute, e.g., theft,
conversion by a bailee, shoplifting, etc.[5]  On other occasions, the term Aoffense@ was used to mean
the constitutional parameters of criminal conduct for double jeopardy purposes,
e.g., theft, conversion by a bailee, and 

 








shoplifting could constitute one offense if
perpetrated in the same criminal transaction.[6]  Thus, Texas jurisprudence is filled with such
confusing statements as, AThere must not only be prior offenses
[i.e., statutory violations] but prior convictions, not of the same offense
[i.e., jeopardy limited conduct], but of an offense [i.e.,
statutory violation] of a like character as that for which the accused is being
tried.@  Brittian v. State, 214 S.W. 351, 352
(Tex. Crim. App. 1919) (emphasis added).[7]

Another difficulty presented by this
scheme is that it put a tremendous burden upon the prosecution to correctly
anticipate variances in the evidence.  For
example, a defendant might commit two penal violations in a single act as where
he commits both rape and incest at the same moment.  See Hunt v. State, 59 S.W.2d 836, 840
(Tex. Crim. App. 1933).  In this
circumstance, if he were charged only with rape, the defendant might offer some
evidence that the act was consensual, but if he were charged only with incest,
the defendant might produce some evidence challenging the familial relationship
between himself and the victim. 
Exacerbating this problem was the common law rule that only one offense
could be alleged (and, thus, only one conviction could be obtained) in a single
indictment.  Watson v. State, 900,
S.W.2d
60, 63 (Tex. Crim. App. 1995).[8]      













To promote justice, the Texas legislature
provided that allegations of several statutory violations, all committed in the
same Acriminal
transaction@ and, thus, all qualifying as the same
offense, could be pled in separate counts in the same indictment.[9]  From 1879 until 1966, the Code of Criminal
Procedure provided that an indictment Amay contain as
many counts, charging the same offense, [i.e., the same
transaction] as the attorney who prepares it may think necessary to insert.@[10]  In 1966, the Code of Criminal Procedure was
altered slightly to provide that an indictment Amay contain as
many counts charging the same offense as the attorney who prepares it,
acting in good faith, may think necessary to insert, but may not charge more
than one offense.@[11]  The rationale being that the State ought to
be permitted to allege all of the various statutory violations arising in a
single criminal transaction (i.e., in a single Aoffense@) in one
indictment to meet the contingencies of evidence that might develop in trial
with the view of securing but one conviction.[12]

Thus, for more than a century, the State
was permitted to include in one indictment as many distinct penal violations
occurring during the same criminal transaction as it, in good faith, believed
necessary and prudent to meet all the possible contingencies of the
evidence.  The State could not, however,
join in one indictment offenses alleged to have been committed in different
criminal transactions.  The general rule
was that only one conviction could be obtained in a single trial.[13]

The
1973 Amendments

In 1973, the rules
regarding joinder were dramatically altered when the legislature adopted a new
penal code and amended the code of criminal procedure.  A variety of interests were served by the new
legislation.  Judicial resources were
conserved in that different offenses, for the first time, could be included in
a single indictment.  Thus, multiple
convictions could be obtained in one trial. 
Variances between the allegata and the probata were
reduced by granting the State the flexibility to allege in a single count all
the various 








manner and means by which the proof might show the
defendant committed the offense.[14]  Technical pleading errors were lessened by
the legislature=s broad definitions of penal
offenses.  Finally, this was achieved
without impinging upon the defendant=s constitutional
right to be apprised of the specific offense with which he has been accused.

At the heart of its reforms, the
legislature drafted penal violations so broadly that each violation constitutes
a single offense for jeopardy purposes. 
The new penal code, for example, consolidated the former prohibitions
against Atheft, theft by
false pretext, conversion by a bailee, theft from the person, shoplifting,
acquisition of property by threat, swindling, swindling by worthless check,
embezzlement, extortion, receiving or concealing embezzled property, and
receiving or concealing stolen property@ into the single
offense of theft.  Tex. Pen. Code Ann. ' 31.02 (Vernon
1994).  This innovation eliminated the
former linguistic confusion regarding the term Aoffense.@  Now, a statutory Aoffense@ is ordinarily
intended to be synonymous with the parameters of a jeopardy limited Aoffense.@

Today, two or more offenses may be joined
in a single indictment, information, or complaint, with each offense stated in
a separate count, if the offenses arise out of the same criminal episode.  Tex.
Code Crim. Proc. Ann. art. 21.24 (a) (Vernon 1989).[15]  A count may contain as many separate paragraphs
charging the same offense as necessary, but no paragraph may charge more than
one offense.  Tex. Code Crim. Proc. Ann. art. 21.24 (b) 








(Vernon 1989). 
The new scheme preserves the defendant=s right to insist
upon a separate trial for each count, but it also encourages judicial
efficiency by providing the incentive of concurrent punishments if the
defendant agrees to the joinder of multiple offenses.  Tex.
Pen. Code Ann. '' 3.03 & 3.04 (Vernon 1994).  These innovative reforms, however, were
gravely undermined by the decision in Vick v. State.

Vick v. State

In Vick, the Court of Criminal
Appeals turned back the clock.  Instead
of one offense of sexual assault, the Court of Criminal Appeals has now created
at least eight (and perhaps more) distinct crimes, i.e., (1) sexual
assault by penetration of the sexual organ or anus of an adult victim, (2)
sexual assault by penetration of the mouth of an adult victim with the
defendant=s sexual organ, (3) sexual assault by
causing one adult person=s sexual organ to contact or penetrate the
mouth, anus, or sexual organ of another adult person, (4) sexual assault by
penetration of the anus or sexual organ of a child by any means, (5) sexual
assault by penetration of the mouth or a child with the defendant=s sexual organ,
(6) sexual assault by causing the sexual organ of a child to contact or
penetrate the mouth, anus, or sexual organ of another person, (7) sexual
assault by causing the anus of a child to contact the mouth, anus, or sexual
organ of another person, and (8) sexual assault by causing the mouth of a child
to contact the anus or sexual organ of another person.  Surely, this was not the intent of the
legislature.

The Court of Criminal Appeals based its
opinion on the fact that each of the foregoing descriptions of sexual assault
is set out in a separate paragraph of the statute.  This is true, however, of numerous
offenses.  For example, using Vick=s rationale, we
also could hold the legislature intended to create six different and distinct
offenses of aggravated kidnapping because the statute lists in separate
paragraphs that the offense may be committed by (1) holding the victim for
ransom or reward, (2) using the victim as a shield or hostage, (3) using the
victim to facilitate the commission of a felony, (4) inflicting bodily injury
on the victim, 

 








(5) terrorizing the victim, or (6) using the victim to
interfere with the performance of a governmental function.  Every reason recited in Vick for
interpreting Sections 22.011 and 22.021 as containing distinct offenses is
equally true of murder, capital murder, aggravated kidnapping, indecency with a
child, injury to a child, endangering a child, terroristic threat, bigamy,
interference with child custody, arson, criminal mischief, robbery, burglary,
theft of trade secrets, forgery, bribery, disorderly conduct, and many other
offenses in the Penal Code too numerous to mention here.  However, in every other instance, outside of
sexual assault, these statutory descriptions have been interpreted as various
manner and means by which the offense may be committed, not a list of separate
and specific offenses.

In Vick, the Court of Criminal Appeals did what the
United States Supreme Court has said it may not do.  While a State has wide latitude to define
crimes and to prescribe the punishment for a given crime,

. . . the Constitution does not permit a State to punish as
two crimes conduct that constitutes only one Aoffence@ within the
meaning of the Double Jeopardy Clause. 
For whenever a person is subjected to the risk that he will be convicted
of a crime under state law, he is Aput in jeopardy of
life or limb.@ If the prohibition against being Atwice put in
jeopardy@ for Athe same offence@ is to have any
real meaning, a State cannot be allowed to convict a defendant two, three, or
more times simply by enacting separate statutory provisions defining nominally
distinct crimes. If the Double Jeopardy Clause imposed no restrictions on a
legislature=s power to authorize multiple punishment,
there would be no limit to the number of convictions that a State could obtain
on the basis of the same act, state of mind, and result. A State would be free
to create substantively identical crimes differing only in name, or to create a
series of greater and lesser‑included offenses, with the first crime a
lesser‑included offense of the second, the second a lesser‑included
offense of the third, and so on.

Missouri v. Hunter, 459 U.S. 359, 370B71 (1983).

For example, if a defendant is convicted
of murder by intentionally and knowingly causing the death of the deceased, can
he later be prosecuted for murder of the same victim 








by intentionally committing a felony involving an act
clearly dangerous to human life that caused the death of the deceased?  He cannot, and there is no logical reason
this rule should not also apply with respect to sexual assaults.

If a defendant stabs, pistol whips, and
shoots the complainant, can he be convicted of multiple aggravated assaultsConce by causing
serious bodily injury with a knife, once by causing serious bodily injury with
a gun, and once again for assault while exhibiting a deadly weapon?  Absolutely not, and while a sexual assault
may be committed (like conventional assault) in a variety of ways, it is but
one assault.

In addition to violating the defendant=s protections
under the Double Jeopardy Clause of the Fifth Amendment, Vick works a
great hardship upon the State as well. 
Prior to Vick, the State could indict a defendant for a sexual
assault and allege all of the various manner and means listed in the statute
that the prosecutor reasonably believed the evidence might show and, thus, be
prepared to meet all the possible contingencies in a single trial.  Suppose, in a hypothetical case, that the
victim was unconscious, blindfolded, incompetent, or a very young minor at the
time of the assault.  Physical evidence
might show definite penetration of the victim=s vagina.  However, due to the victim=s lack of
knowledge, it might be equally plausible that the penetration was by the
defendant=s sexual organ, the sexual organ of an
accomplice, a finger, a mop handle, or any number of similar objects.  Yet, after Vick, the State must allege,
at its peril, the precise method of penetration because at least three distinct
and separate offenses may have been committed. 
These offenses either must be alleged in separate counts or contained in
separate indictments.  In any event, the
defendant has the absolute right to a separate trial in each case giving him
the opportunity at each successive trial to suggest to the jury that
penetration was by some method other than that presently alleged in the
indictment.

Here, the evidence shows the defendant
committed numerous assaults over a period of many months.  The State prosecuted appellant for several of
these assaults, alleging the various manner and means in separate
paragraphs.  Vick requires us,
however, to view the 








indictments not as containing paragraphs alleging
different manner and means of committing the same offense, but as counts
alleging different offenses.  This
interpretation does violence to the Fifth Amendment, the Texas Penal Code, and
the Texas Code of Criminal Procedure.  If
writing on a clean slate, I would find each of the indictments presented here
contain two or more paragraphs alleging different manner and means of
committing an offense.

Because we are an intermediate appellate
court and are bound by the holding in Vick, I respectfully concur in the
judgment.

 

 

 

 

/s/      J. Harvey Hudson

Justice

 

 

 

 

Judgment
rendered and Majority and Concurring Opinions filed November 16, 2004.

Panel
consists of Justices Anderson, Hudson, and Frost.

Publish
C Tex. R. App. P. 47.2(b).











[1]  Whitford v. State, 6 S.W.  537, 537 (Tex. Ct. App.
1887); also Kalish v. State, 662 S.W.2d 595, 598 (Tex. Crim. App. 1983).






[2]  Leal v.
State, 711 S.W.2d 702, 707 (Tex. App.CCorpus
Christi 1986), aff=d in part, rev=d
in part on other grounds, 782 S.W.2d
844 (Tex. Crim. App. 1990).





[3]  The Court of
Appeals reasoned:

. . .
there may be any number of distinct [statutory] crimes in a single criminal
transaction.  This comes from the fact
that, the words of our language being limited, while the transactions of life
may almost be termed infinite in variety, and the lines to be drawn around
specific offenses being necessarily incomparably more limited than the words,
it is impossible that there should be an exact outline of crime whose
circumference shall exactly coincide with every criminal transaction.

Whitford, 6
S.W. at 537.





[4]  Under the carving doctrine the Ageneral rule@ was Aa party may in a criminal
proceeding be held to answer for any offense, great or small, which can be
legally carved out of a transaction.@  Jackson v. State,
43 Tex. 421, 423 (1875). 





[5]  For example, Awe find that all of the elements necessary to charge
the offense of assault with intent to rob are contained in the
indictment charging the offense of robbery by assault against the principal.@  Tomlin v.
State, 233 S.W.2d 303, 304 (Tex. Crim. App. 1950) (emphasis added).





[6]  For example, AUnder the doctrine of carving in this State the prosecuting
attorney may carve as large an offense out of a single transaction as he
can, but he must cut only once, and the State can carve but one conviction for
the same offense.@  Fleming v.
State, 330 S.W.2d 457, 459 (Tex. Crim. App. 1959) (emphasis added).





[7]  Despite this
unfortunate linguistic imprecision, it is manifest in common law that several statutory
offenses may constitute the same offense for jeopardy purposes.  For example, Blackstone observes that Aa conviction of manslaughter, on an
appeal, is a bar even in another appeal, and much more in an indictment, of
murder; for the fact prosecuted is the same in both, though the offenses differ
in colouring and in degree.@  Id. at
*330.  To lessen the confusion, I shall
hereafter refer to statutory Aviolations@ and jeopardy limited Aoffenses.@





[8]  This doctrine
was colorfully and emphatically embraced by the Court of Appeals:

 Can defendant be convicted of two felonies
under the same indictment, and be punished for each?  The learned trial judge admits in his
argument that there is no precedent for such a proceeding as the one at bar to
be found in the Texas decisions, nor, indeed, can any well‑considered
case be found in any state except in those courts in which the judge assesses
the punishment, 

 

 

and where he is limited in the aggregate to the
highest punishment that can be given upon any one count.  We have no such law in Texas.  We have no desire to establish any such
precedent. . . .  If that could be done,
a man could be crushed by accumulating charges, or injured by their solemn
presentation to the jury. 

Crawford v. State, 19 S.W. 766, 767 (Tex. Ct. App. 1892)





[9]  AThe object in inserting various counts in an
indictment is not to secure separate convictions for as many counts, but to
meet the various phases of the testimony; and it is permissible and proper to
charge all the felonies which go to make up the offense committed by the
defendant, but not to charge different offenses committed at different times
and in different transactions.  * *
*  Where two or more felonies are charged
in the same indictment, the presumption is they are parts of the same
transaction, and are to be sustained by the same evidence; and while they all
may be submitted to a jury, there can be but one conviction which, as it were,
appropriates the guilty intent which runs through and connects these several
acts or offenses and makes them one. @  Crawford, 19 S.W. at 767.





[10]  Revised Statutes of Texas, 16th
Leg. (1879) (emphasis added).  Article
433 of the 1879 Code of Criminal Procedure provided:

An indictment or information may contain as
many counts, charging the same offense, as the attorney who prepares it may
think necessary to insert, and an indictment or information shall be sufficient
if any one of its counts be sufficient.

Id.  This language was carried forward in the
1895, 1911, and 1925 Codes of Criminal Procedure.  See Art. 469 C.C.P., Revised Civil Statutes of the State of Texas, 24th
Leg. (1895); Art. 481 C.C.P., 2 Vernon=s Criminal Statutes of Texas (1916);
Art. 417 C.C.P., 1928 Complete Texas
Statutes (Vernon 1928).





[11]  Acts
1965, 59th Leg. p. 317, ch. 722, '1,
eff. Jan. 1, 1966.





[12]  AIn theory every count is an indictment for a distinct
offense; but in fact several counts are resorted to and the offense stated in
different forms and in different circumstances to meet the evidence adduced on
the trial, but in no event could there be in such cases more than a single punishment.@  Crawford,
19 S.W. at 767.  For example, in Johnson
v. State, 107 S.W. 52, 53 (Tex. Crim. App. 1907), the court held that in
the case of a burglary committed at twilight 
it was permissible for the State to allege burglary at night and
burglary in the daytime in the same indictment (although these were distinct
offenses at that time) to meet all the possible contingencies that might arise
under the facts developed at trial.





[13]  See
Caldwell v. State, 56 S.W.2d 883, 885 (Tex. Crim. App. 1932) (holding it is
Athe general rule that the accused cannot be convicted
for two felonies on one trial under one indictment.@); see also Crawford, 19 S.W. at 767 (AIn an indictment for felony different counts are drawn
with a view to one and the same transaction, so that some one count may be
found on the trial to be in accordance with the evidence.  This is legitimate, but it sometimes happens
that the prosecutor=s object in inserting different counts is really to
prosecute the defendant for separate offenses by one indictment.  This he has no right to do, and when
ascertained before the trial the court will defeat his design.@)





[14]  For example,
if the evidence shows the victim died of blunt trauma to the brain, and there
is found near the body a liquor bottle, a stick, and other household objects
like pots and pans, how should the State proceed?  If the State alleges the murder was committed
by striking the deceased with the liquor bottle, the defendant might testify at
trial that he actually used the stick. 
If the State alleges the murder was committed by striking the deceased
with the stick, the jury might have some doubt as to whether or not the
defendant used a frying pan.  In such a
case it is permissible for the indictment to allege that the defendant caused
the death of the deceased Aby striking his head with a glass bottle and by
striking his head with a piece of wood and by means and manner unknown to the
Grand Jury.@  See
Zanghetti v. State, 618 S.W.2d 383, 384 (Tex. Crim. App. 1981).





[15]  Thus, Acriminal episode@ has
replaced the former concept of Acriminal transaction.@  Under the current penal code, a Acriminal episode@ means
the commission of two or more offenses (1) committed pursuant to the same
transaction; (2) committed pursuant to two or more transactions that are
connected or constitute a common scheme or plan; or (3) that are the repeated
commission of the same or similar offense. 
Tex. Pen. Code Ann. ' 3.01 (Vernon 2003).