COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



|  |  |  |
|---|---|---|
| | § | |
| VERONICA MONTOYA, | | |
| INDIVIDUALLY AND ON BEHALF OF | § | No. 08-12-00070-CV |
| THE ESTATE OF JESSICA MONTOYA, | | |
| DECEASED, | § | Appeal from |
| | | |
| Appellant, | § | 120th District Court |
| | | |
| v. | § | of El Paso County, Texas |
| | | |
| NICHIRIN-FLEX U.S.A., INC., | § | (TC # 2011-DCV-10027) |
| | | |
| Appellee. | § | |

## **O P I N I O N**

Veronica Montoya, individually and on behalf of the estate of Jessica Montoya, appeals

from a summary judgment granted in favor of Nichirin-Flex, U.S.A., Inc. (Nichirin). For the

reasons that follow, we affirm.

**FACTUAL SUMMARY**

Nichirin supplies automotive parts to Japanese auto makers in the United States. and it

has facilities in El Paso and Juarez. The El Paso facility (the Building) is a 36,000 square feet

warehouse used for the storage and distribution of automotive parts. It consists of three areas:

the office, lunch/break room, and warehouse. The Building has a flat, corrugated metal roof

covered with a tarpaper-like material. Prior to August 18, 2010, leaks developed in the

Building's roof and water began leaking into the warehouse area. At least one of the leaks was significant enough to require Nichirin to place a bucket beneath the leak to catch the water from the air conditioners on the roof. The bucket was used for months at a time.

Nichirin's Quality Control Manager, Eduardo Contreras, contacted SPF Foam Roofing and Insulation, a sole proprietorship owned by Pablo Covarrubias, regarding an estimate for the work and materials necessary to repair the leaks in the roof. SPF is in the business of applying elastomeric and foam coating to roofs and it does not construct or replace roofs. Covarrubias and Contreras went onto the roof and Covarrubias conducted his inspection. Covarrubias subsequently provided Nichirin with three options:

> Option #1 -- Clean the area where coating will be applied (4445 sq ft)
> Seal all penetrations such as ducts, flashings, skylights, applying fibered-acrylic, titanium oxide elastomeric white color coating.
> This application does not include warranty; it is only a repair

> Option #2 -- Clean the area where coating will be applied (36065 sq ft)
> Apply fibered-acrylic titanium oxide elastomeric gray primer
> Apply fibered-acrylic, titanium oxide, elastomeric white color coating
> 5 year warranty

> Option #3 -- Clean the area where foam will be applied
> Apply 1 inch spray polyurethane foam (36065 sq ft)
> Apply acrylic, elastomeric white color primer
> 5 year warranty

Nichirin chose Option #1.

On August 23, 2010, SPF began the work on the roof. Veronica Montoya's daughter, Jessica Montoya, worked for SPF as a helper and performed light duty labor which included carrying buckets and hoses. Her duties also included application of the sealant by roller or brush but she did not operate any machinery. Jessica did not go to the job site until August 24, 2010. She ascended to the roof and began using a blower to clean the area near the parapet in preparation for the coating. She was not using any kind of safety restraints because Covarrubias

- 2 -

believed there was almost zero risk of a fall from a flat roof with parapets.[1] Jessica fell through a corroded area of the metal roof onto the warehouse floor thirty feet below and suffered fatal blunt force injuries.

Montoya filed a premises liability action against Nichirin based on the dangerous condition of its premises. She also filed a negligence action against Covarrubias. Nichirin filed a traditional summary judgment motion based on a defense provided by Chapter 95 of the Texas Civil Practice and Remedies Code. The trial court granted the summary judgment motion and severed the claim against Nichirin from the remaining claim.

**PROPERTY OWNER'S LIABILITY**

In two related issues, Montoya contends that the trial court erred by granting summary judgment because Chapter 95 is inapplicable to her claim against Nichirin. First, she argues that the evidence raised a genuine issue of material fact as to whether the deceased and her employer were constructing, repairing, renovating, or modifying an improvement to real estate. Second, she asserts that the evidence failed to conclusively establish that the death of the deceased resulted from a condition of the improvement which was the object of her work.

*Standard of Review*

The standard of review for traditional summary judgment under TEX.R.CIV.P. 166a(c) is well established. *Nixon v. Mr. Property Management Company, Inc.*, 690 S.W.2d 546, 548 (Tex. 1985). The moving party carries the burden of showing there is no genuine issue of material fact and it is entitled to judgment as a matter of law. *Diversicare General Partner, Inc. v. Rubio*, 185 S.W.3d 842, 846 (Tex. 2005); *Browning v. Prostok*, 165 S.W.3d 336, 344 (Tex. 2005). Evidence favorable to the non-movant will be taken as true in deciding whether there is a disputed issue of

---

[1] Covarrubias was unaware at the time of the accident that OSHA regulations required an employee working around skylights over six feet from the ground to use some type of fall restraints.

material fact. *Fort Worth Osteopathic Hospital, Inc. v. Reese*, 148 S.W.3d 94, 99 (Tex. 2004); *Tranter v. Duemling*, 129 S.W.3d 257, 260 (Tex.App.--El Paso 2004, no pet.). All reasonable inferences, including any doubts, must be resolved in favor of the non-movant. *Fort Worth Osteopathic Hospital*, 148 S.W.3d at 99. A defendant is entitled to summary judgment if the evidence disproves as a matter of law at least one element of each of the plaintiff's causes of action or if it conclusively establishes all elements of an affirmative defense. *D. Houston, Inc. v. Love*, 92 S.W.3d 450, 454 (Tex. 2002); *Randall's Food Markets, Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995). Once the defendant establishes a right to summary judgment as a matter of law, the burden shifts to the plaintiff to present evidence raising a genuine issue of material fact. *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 678-79 (Tex. 1979); *Scown v. Neie*, 225 S.W.3d 303, 307 (Tex.App.--El Paso 2006, pet. denied). We review the grant or denial of a traditional motion for summary judgment *de novo*. *Valence Operating Company v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Texas Integrated Conveyor Systems, Inc. v. Innovative Conveyor Concepts, Inc.*, 300 S.W.3d 348, 365 (Tex.App.--Dallas 2009, pet. denied).

*Applicability of Chapter 95*

Chapter 95 of the Texas Civil Practice and Remedies Code was enacted in 1996 as part of a sweeping tort-reform package. *Chi Energy, Inc. v. Urias*, 156 S.W. 3d 873, 878 ( Tex.App.--El Paso 2005, pet. denied). It applies only to a claim:

(1) against a property owner, contractor, or subcontractor for personal injury, death, or property damage to an owner, a contractor, or a subcontractor or an employee of a contractor or subcontractor; and

(2) that arises from the condition or use of an improvement to real property where the contractor or subcontractor constructs, repairs, renovates or modifies the improvement.

TEX.CIV.PRAC.&REM.CODE ANN. § 95.002 (West 2011). A "claim" is a claim for damages caused by negligence. TEX.CIV.PRAC.&REM.CODE ANN. § 95.001(1). A "property owner" is a person or entity that owns real property primarily used for commercial or business purposes. TEX.CIV.PRAC.&REM.CODE ANN. § 95.001(3).

Under Section 95.003, a property owner is not liable for personal injury, death, or property damage to a contractor or an employee of a contractor who constructs, repairs, renovates, or modifies an improvement to real property, including personal injury, death, or property damage arising from the failure to provide a safe workplace, unless: (1) the property owner exercises or retains some control over the manner in which the work is performed, other than the right to order the work to start or stop or to inspect progress or receive reports; and (2) the property owner had actual knowledge of the danger or condition resulting in the personal injury, death, or property damage and failed to adequately warn. TEX.CIV.PRAC.&REM.CODE ANN. § 95.003 (West 2011). The property owner has the burden to establish that Chapter 95 applies to the plaintiff's claim. *See Gorman v. Ngo H. Meng*, 335 S.W.3d 797, 802 (Tex.App.--Dallas 2011, no pet.); *Rueda v. Paschal*, 178 S.W.3d 107, 111 (Tex.App.--Houston [1st Dist.] 2005, no pet.). Once the defendant has shown that chapter 95 applies to the claim, the plaintiff has the burden to establish both prongs of section 95.0003. *Gorman*, 335 S.W.3d at 802-03; *Rueda*, 178 S.W.3d at 111.

To be entitled to summary judgment, Nichirin had to conclusively establish that:

(1) it is a property owner;

(2) Montoya is alleging that Nichirin is liable for personal injury or death;

(3) the injured person was a contractor or employee of a contractor; and

(4) Montoya's claim arises from a condition or use of an improvement to Nichirin's property where SPF was constructing, repairing, renovating, or modifying the improvement.

*See Vanderbeek v. San Jacinto Methodist Hospital*, 246 S.W.3d 346, 350-51 (Tex.App.--Houston [14th Dist.] 2008, no pet.). The summary judgment evidence conclusively established that Nichirin is the property owner, Montoya's suit alleges that Nichirin is liable for the death of Jessica Montoya, and the deceased was an employee of the contractor SPF.[2]

### *Was SPF Constructing, Repairing, Renovating, or Modifying the Improvement?*

Montoya first argues that the evidence raised a genuine issue of material fact as to whether the deceased and SPF were constructing, repairing, renovating, or modifying an improvement to real estate. She asserts that SPF and the deceased were engaged in routine maintenance of the roof rather than an activity which falls within Section 95.002(2).

Montoya's argument raises a question of the meaning of the words "constructs, repairs, renovates, or modifies" as used in Section 95.002(2). Statutory construction is a legal question which is reviewed *de novo*. *HCBeck, Ltd. v. Rice*, 284 S.W.3d 349, 352 (Tex. 2009). Our primary objective in construing any statute is to determine the Legislature's intent in enacting the particular provision, and to give that provision its intended effect. *McIntyre v. Ramirez*, 109 S.W.3d 741, 745 (Tex. 2003); *Emeritus Corporation v. Blanco*, 355 S.W.3d 270, 276 (Tex.App.--El Paso 2011, pet. denied). When construing a statute, we begin with its language. *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006). Generally, we accept the ordinary meaning of words used unless the Legislature has provided a specific statutory definition. *Cities of Austin, Dallas, Fort Worth & Hereford v. Southwestern Bell Telephone Company*, 92 S.W.3d 434, 442 (Tex. 2002). We may also consider the object to be attained by the statutes, the circumstances surrounding the statute's enactment, legislative history, former statutory and common law, and the consequences of a particular construction. *Id.*

---

[2] Montoya does not challenge these elements on appeal.

The Legislature has not defined the terms "constructs," "repairs," "renovates," or "modifies" as used in Section 95.002(2). Consequently, the words must be given their ordinary meaning. Webster defines the words as follows:

1. construct - to build or form by putting together parts; frame; devise.

2. repair - to restore to a good or sound condition after decay or damage; mend: to repair a motor; to restore or renew by any process of making good, strengthening, etc.: to repair one's health by resting.

3. renovate - to restore to good condition; make new or as if new again; repair.

4. modify - to change somewhat the form or qualities of; alter partially.

Webster's New Universal Unabridged Dictionary 436, 1236, 1632 (2003). Nichirin argues, as it did in the trial court, that application of the coating to the roof for the purpose of stopping the leaks constituted repair, renovation or modification. Montoya, on the other hand, contends that application of the coating to the roof was routine maintenance, not construction, repair, renovation, or modification. Webster defines "maintenance" as "the state of being maintained," and "care or upkeep, as of machinery or property." Webster's New Universal Unabridged Dictionary 1160 (2003). The word "maintain" is further defined as "to keep in an appropriate condition, operation, or force; keep unimpaired" or "to keep in a specified state." Webster's New Universal Unabridged Dictionary 1160 (2003). Thus, routine maintenance contemplates action done periodically in order to keep something in an appropriate condition or specified state.

The summary judgment evidence showed that elastomeric foam and polyurethane coatings are applied to flat roofs on a periodic basis as part of routine maintenance of the roof. The undisputed summary judgment evidence also established that Nichirin had not engaged in periodic maintenance of the flat roof and SPF applied the coating to the flat roof of the Building for the express purpose of stopping the incursion of water into the building. Under the facts of

this case, the activity was not aimed at keeping the roof in an existing state. It instead was done to restore a primary function of a roof, namely, keeping water and other elements out of the building's interior. While there may be multiple ways to repair a leaky roof, including complete replacement of the roof, applying a sealant coating certainly constitutes repair as that term is commonly understood. Under the above definitions, SPF's application of the coating constituted repair of the flat roof within the meaning of Section 95.002(2). *See Francis v. Coastal Oil & Gas Corporation*, 130 S.W.3d 76, 85 (Tex.App.--Houston [1st Dist.] 2003, no pet.)(holding that cleaning a gas well by means of a "coiled-tubing washout" amounted to repair or renovation under Section 95.002(2) because the purpose of the cleaning was to rehabilitate the well so that the flow of gas could increase).

Montoya argues that a fact issue exists with respect to whether SPF and the deceased were engaged in routine maintenance of the roof rather than repair or one of the other activities under Section 95.002(2). In support of this argument, she points to the testimony of Covarrubias and Sergio Anguiano, his only permanent employee, that they were performing maintenance on the roof, not repair. Anguiano explained that maintenance should be performed on flat roofs every three years. Covarrubias also testified that SPF did not modify, renovate, or repair the roof. Sandra Hernandez, Nichirin's accounting manager, testified in her deposition that she would consider option 1 of the written proposal submitted by Covarrubias to be maintenance of the roof.

Nichirin responds that the testimony relied on by Montoya to create a fact issue is conclusory. A statement is conclusory if it does not provide the underlying facts to support the conclusion. *See Brown v. Brown*, 145 S.W.3d 745, 751 (Tex.App.--Dallas 2004, pet. denied); *Dolcefino v. Randolph*, 19 S.W.3d 906, 930 (Tex.App.--Houston [14th Dist.] 2000, pet. denied).

An unsupported legal conclusion is likewise conclusory. *See S & I Mgmt., Inc. v. Sungju Choi*, 331 S.W.3d 849, 856 (Tex.App.--Dallas 2011, no pet.). Conclusory testimony or affidavits are not competent summary judgment evidence and are insufficient to create a question of fact to defeat summary judgment. *See McIntyre*, 109 S.W.3d at 749-50; *Cammack the Cook, L.L.C. v. Eastburn*, 296 S.W.3d 884, 894-95 (Tex.App.--Texarkana 2009, pet. denied). The testimony of Covarrubias, Anguiano, and Hernandez that application of the sealant coating to the roof is maintenance, not repair, is an unsupported legal conclusion, and as such, it is incompetent to create an issue of fact sufficient to defeat summary judgment.

Citing *Moore v. Howmet Corp.*, No. CA 7:03-CV-0215-R, 2005 WL 856852 (N.D. Tex. April 12, 2005), Montoya also argues that Chapter 95 does not apply because the work performed by SPF was not inherently dangerous and did not require the knowledge of an expert. In *Moore*, the plaintiff was employed by a company which provided maintenance and janitorial services to the defendant. Moore sued Howmet alleging he was injured when he fell while attempting to change an air filter on Howmet's premises. Howmet moved for summary judgment based on Chapter 95, but Moore responded that the defense did not apply because he was not constructing, repairing, renovating, or modifying an improvement to real property as required by Section 95.002(3). *Moore*, 2005 WL 856852 at *1. The district court held that Chapter 95 applies only in those situations where a property owner hires "someone with expertise to repair or renovate some improvement on their property" and that individual is injured while performing work on the property owner's premises. *Moore*, 2005 WL 856852 at *2, *quoting Dyall v. Simpson Pasadena Paper Co.*, 152 S.W.3d 688, 697-99 (Tex.App.--Houston [14th Dist.] 2004, pet. filed). The court concluded that Chapter 95 does not apply where the property owner hires someone to do routine work that is either not dangerous or does not require

the knowledge of an expert. *Moore*, 2005 WL 856852 at *2. The district court denied Howmet's motion for summary judgment.

We agree with *Moore's* conclusion that Chapter 95 does not apply where the only activity is replacement of an air filter because that does not constitute construction, repair, renovation, or modification of an improvement. The federal district court's holding that Chapter 95 does not apply unless the contractor is an expert or the work is inherently dangerous grafts limitations on the application of Chapter 95 that are not found in the statutory language. We therefore decline to follow that aspect of the case. For all of these reasons, Issue One is overruled.

*Does the Claim Arise From the Condition of the Improvement?*

In her second issue, Montoya asserts that the evidence failed to conclusively establish that the death of the deceased resulted from a condition of the improvement which was the object of her work. More specifically, she argues that SPF and the deceased were not working on the section of the roof which failed. The evidence showed that the portion of the roof which collapsed was approximately eight to ten feet away from the area of the roof being repaired. Montoya relies on *Hernandez v. Brinker International, Inc.*, 285 S.W.3d 152, 157-61 (Tex.App.--Houston [14th Dist.] 2009, no pet.)(plurality opinion) to support her argument. In that case, the plaintiff went onto the defendant's roof to replace a compressor motor in an air conditioning unit. *Id.* at 153-54. The plaintiff was injured when the roof collapsed and he sued the defendant. *Id.* at 154. Evidence showed that the property owner had scheduled a roof replacement due to some leaking and a soft spot in the roof. *Id.* The defendant did not warn the employee about the problems with the roof. *Id.* In a plurality decision, the Fourteenth Court of Appeals construed Section 95.002 to require that the defendant show the claim arose from the condition or use of an improvement to real property and the contractor was constructing,

repairing, renovating, or modifying the same improvement which caused the injury. *Hernandez*, 285 S.W.3d at 161. Because the plaintiff's injury arose from the condition of the roof but the plaintiff was working on the air conditioner, the court of appeals concluded that Chapter 95 did not apply. *Id.*

Montoya concedes that other courts have held that Chapter 95 does not require that the defective condition causing injury or death be the object of the contractor's work. *See e.g., Covarrubias v. Diamond Shamrock Refining Company, L.P.*, 359 S.W.3d 298, 302-03 (Tex.App.--San Antonio 2012, no pet.)(holding that Chapter 95 applied to employee's claim against property owner for serious burns sustained from dangerous condition on property even though the defective improvement was not the improvement employee was assigned to repair; the injuries occurred when the employee was riding a lift to access his work area and the handrail on the lift hit a connector resulting in the release of hydrocarbons); *Clark v. Ron Bassinger, Inc.*, No. 07-03-0291-CV, 2006 WL 229901, at *2 (Tex.App.--Amarillo Jan. 31, 2006, no pet.) (finding Chapter 95 applied to claims by contractor's employee who fell through a covered skylight opening on a roof while working for a contractor engaged in constructing a house even though the covered skylight opening was not the object of the plaintiff's work); *Phillips v. The Dow Chemical Company*, 186 S.W.3d 121, 131-32 (Tex.App.--Houston [1st Dist.] 2005, no pet.)(finding Chapter 95 applied to a claim by contractor's employee who fell from scaffolding used to access an improvement being repaired); *Francis*, 130 S.W.3d at 83 (stating that "the injuries must relate to work being done by the injured party, but the injury-producing defect need not be the object of the injured party's work."); *Fisher v. Lee & Chang Partnership*, 16 S.W.3d 198, 200-02 (Tex.App.--Houston [1st Dist.] 2000, pet. denied)(finding Chapter 95 applied to claims by contractor's employee who fell from a ladder used to access roof-mounted air

conditioning units being repaired); *see also Painter v. Momentum Energy Corporation*, 271 S.W.3d 388, 397-98 (Tex.App.--El Paso 2008, pet. denied)(holding that disassembly of drilling rig was construction of an improvement to real property under Chapter 95 and rejecting argument that equipment which fell on workers was not an improvement because workers' injury and death arose out of work done on an improvement); *Chi Energy, Inc.*, 156 S.W.3d at 879, *citing Fisher* for the rule that the injuries must relate to work being done by the injured party, but the injury-producing defect need not be the object of the injured party's work. Montoya asks us to follow *Hernandez* rather than *Fisher* and the cases cited above.

In *Fisher*, the plaintiff was employed by a contractor who had been hired by a property owner to work on roof-mounted air conditioning units. *Fisher*, 16 S.W.3d at 200. The plaintiff was injured when he fell from a ladder used to gain access to the roof. The trial court granted the defendants' summary judgment motion based on Chapter 95. On appeal, the plaintiff argued that Chapter 95 did not apply because his injuries did not result from his work on the air conditioners. The First Court of Appeals engaged in a thorough examination of Sections 95.002 and 95.003. *Id.* at 200-02. The court read these two sections together, rather than considering only isolated portions of either section, and it construed the statutes to give effect to legislative intent. *Fisher*, 16 S.W.3d at 200-01. It also considered the legislative history and noted that the purpose of Chapter 95 was to change tort law regarding joint and several liability. *Id.* at 201-02. The court concluded that Sections 95.002 and 95.003 are consistent and may both be read to provide protection from liability if the injury arose from the contractor's work on an improvement to real property. *Id.* at 201. It rejected the argument that the premises defect must exist within the specific object the contractor is repairing. *Id.* at 202. We believe that *Fisher* is the better-reasoned decision and will follow it here.

Even if we agreed with *Hernandez* and decided to construe Section 95.002 in the same manner as the court of appeals in that case, we still would find that Chapter 95 applies here. The evidence conclusively showed that the deceased was working to repair the roof when the area of the roof where she was standing collapsed beneath her feet. In other words, the premises defect existed in the improvement being repaired by SPF and the deceased. We decline to extend *Hernandez* in such a manner that Chapter 95 will not apply unless the defendant shows that the plaintiff was constructing, repairing, renovating, or modifying the exact portion of the improvement which caused the plaintiff's injury or death. For these reasons, we overrule Issue Two. Because Nichirin conclusively established that Chapter 95 applies to Montoya's claim against it, the trial court did not err by granting summary judgment in Nichirin's favor. The judgment of the trial court is affirmed.

August 7, 2013

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rivera, and Rodriguez, JJ.

- 13 -