**In the Matter of the Expunction of D.W.H.**

No. 08–12–00031–CV.

Court of Appeals of Texas, El Paso.

Oct. 22, 2014.

Bryan L. Walter, Bryan L. Walter, P.C., Grapevine, TX, for Appellant.

Charles M. Mallin, Chief of the Criminal Appellate Section, Tarrant County District Attorney, Fort Worth, TX, for Appellee.

Before McCLURE, C.J., RODRIGUEZ, J., and PARKS, Judge (Sitting by Assignment).

## OPINION

ANN CRAWFORD McCLURE, Chief Justice.

D.W.H. appeals from a judgment denying his petition for expunction. For the reasons that follow, we affirm.

## FACTUAL SUMMARY

D.W.H. and the Tarrant County Criminal District Attorney's Office submitted an agreed statement of facts to the trial court pursuant to Rule 263 of the Texas Rules of Civil Procedure. *See* TEX.R.CIV.P. 263. The agreed statement of facts is eighty-two pages in length and consists of a two-page statement of agreed facts and the following ten exhibits:

- Exhibit A—warrant of arrest and search warrants
- Exhibit B—affidavit from Saginaw Officer Cupples—Arrest and Booking Report
- Exhibit C—Officer Robert Frost's supplement and Sgt. Jim Ragles' supplement
- Exhibit D—Officer Corey Burnett's supplement/crime scene photo log
- Exhibit E—photos of weapons in safe
- Exhibit F—scene entry log and additional officers' supplements
- Exhibit G—complaint and no bill
- Exhibit H—judgment
- Exhibit I—order of surrender
- Exhibit J—pre-sentence report.

The parties agreed that this case began during the early morning hours of June 11, 2008 as a search for a missing female student, B.M. B.M.'s parents reported to the Saginaw Police Department at approximately 2:17 a.m. that their daughter was missing and her vehicle was parked in front of the residence of D.W.H., a high school teacher. The parents reported they had been suspicious of the nature of the relationship because B.M. communicated with D.W.H. frequently at school, after school, and by phone and text messages. B.M.'s mother also told the police that she had seen her daughter inside D.W.H.'s residence through a rear window. B.M.'s parents went to the residence prior to calling the police and knocked on the door. D.W.H. answered the door while holding a rifle. Police officers went to the residence and spoke with D.W.H. but he denied that B.M. was there. He permitted the police to look for B.M. in some rooms in the house but he would not permit the police to search the bedrooms. The officers left the residence and parked down the street to maintain surveillance on the home. At approximately 6:00 a.m., B.M. exited the residence and the police officers immediately made contact with her. She initially denied having been in D.W.H.'s house. B.M. admitted during an interview later that same day she had been at the house the previous evening. She also admitted that she and D.W.H. had kissed and he had touched her breast. D.W.H., who was clothed, had an erection and rubbed against her in a simulation of sexual intercourse.

Based on their investigation conducted on June 11, 2008, the Saginaw Police Department obtained an arrest warrant for D.W.H. for the felony offense of improper relationship between educator and student.[1] The Saginaw P.D. also obtained a search warrant for D.W.H.'s residence located in Saginaw. The police obtained additional search warrants for D.W.H.'s cell phone, laptop, and memory cards. The parties agreed that the same facts are stated in both the arrest and search warrants. The Saginaw P.D. executed the arrest and search warrants at 11:15 p.m. on June 11, 2008. While executing the search warrants at D.W.H.'s residence, the officers located two gun safes. D.W.H. permitted a search of one gun safe but not the other. On June 12, 2008, Saginaw P.D. contacted the manufacturer of the locked gun safe and obtained the pre-set combination to the safe. The officers opened the safe and found unregistered firearms, including a AR15/M16–type weapon with a shortened barrel of only twelve to fourteen inches. The Saginaw P.D. notified ATF and ATF agents were dispatched to the scene. ATF reviewed the photographs taken at D.W.H.'s home and determined that D.W.H. also possessed viable destructive device component parts and 40 mm anti-personnel projectiles which cannot be legally possessed by civilians. Based on this information, ATF obtained a search warrant for D.W.H.'s home to search for prohibited items. ATF executed the warrant on June 19, 2008 and seized additional items including 40 mm practice grenades, 40 mm anti-personnel rounds, 40 mm illumination rounds, military smoke grenades, and containers of smokeless and black powder.

The agreed statement of facts reflects that two criminal charges against D.W.H. arose out of these facts: (1) a state criminal case for the offense of improper relationship between educator and student with an offense date of June 11, 2008 (cause number 1140274 in the Criminal District Court No. 1 of Tarrant County); and (2) a federal criminal case for possession of an unregistered firearm with an offense date of June 12, 2008 (cause number 4:09–CR–022–Y in the United States District Court, Northern District of Texas, Fort Worth Division). A Tarrant County grand jury later no-billed D.W.H. on the improper relationship between educator and student charge. D.W.H. entered a plea of guilty to the federal charge and he was placed on probation.

The parties filed briefs on the issues presented by the case and requested that the trial court render judgment on the agreed statement of facts in accordance with Rule 263. The court denied the petition for expunction.

### Standard of Review

■■ Generally, an appellate court reviews a trial court's ruling on a petition for expunction under the abuse of discretion standard. *See In the Matter of the Expunction of A.G.,* 388 S.W.3d 759, 761 (Tex.App.-El Paso 2012, no pet.). The abuse of discretion standard of review does not apply because the parties asked the trial court to render judgment based on an agreed statement of facts pursuant to Rule 263.

■■ Rule 263 provides:
Parties may submit matters in controversy to the court upon an agreed statement of facts filed with the clerk, upon

---

1. Tᴇx.Pᴇɴᴀʟ Cᴏᴅᴇ Aɴɴ. § 21.12(a)(1)(West Supp.2014) ("An employee of a public or private primary or secondary school commits an offense if the employee engages in sexual con- tact, sexual intercourse, or deviate sexual intercourse with a person who is enrolled in a public or private primary or secondary school at which the employee works").

which judgment shall be rendered as in other cases; and such agreed statement signed and certified by the court to be correct and the judgment rendered thereon shall constitute the record of the cause.

TEX.R.CIV.P. 263. A case tried on agreed facts is considered to have "the nature of a special verdict" and is a request by the litigants for judgment in accordance with the applicable law. *Patton v. Porterfield,* 411 S.W.3d 147, 153 (Tex.App.-Dallas 2013, pet. denied), *citing Hutcherson v. Sovereign Camp, W.O.W.,* 112 Tex. 551, 251 S.W. 491 (1923); *Unauthorized Practice of Law Committee v. Jansen,* 816 S.W.2d 813, 814 (Tex.App.-Houston [14th Dist.] 1991, writ denied). An appellate court conclusively presumes that the parties have brought before the court all facts necessary for the presentation and adjudication of the case. *Patton,* 411 S.W.3d at 154, *citing Cummins & Walker Oil Co. v. Smith,* 814 S.W.2d 884, 886 (Tex.App.-San Antonio 1991, no writ).

▪ The agreed facts are binding on the parties, the trial court, and the appellate court. *Patton,* 411 S.W.3d at 153–54; *see Karam v. Brown,* 407 S.W.3d 464, 475 (Tex.App.-El Paso 2013, no pet.); *Markel Insurance Company v. Muzyka,* 293 S.W.3d 380, 384 (Tex.App.-Fort Worth 2009, no pet.). This is in contrast with the deferential review of the facts employed under the abuse of discretion standard. The question on appeal is limited to the correctness of the trial court's application of the law to the agreed facts. *Patton,* 411 S.W.3d at 154. Because this is a legal question, we review *de novo* whether the trial court properly applied the law to the agreed facts. *Id.*

## FINDINGS OF FACT

▪ D.W.H. asserts in his second issue that the trial court erred by failing to file written findings of fact and conclusions of law pursuant to Rules 296 and 297 of the Texas Rules of Civil Procedure. *See* TEX. R.CIV.P. 296, 297. Due to its potential impact on and relationship to the standard of review, this issue must be address before Issue One.

▪ D.W.H. filed a request for findings and the trial court asked the parties to submit proposed findings. In its response to D.W.H.'s request for findings, the District Attorney's Office took the position that findings of fact are inappropriate because the parties asked the court to decide the case upon an agreed statement of facts. The District Attorney's response included several proposed conclusions of law. The trial court adopted the District Attorney's proposed findings and conclusions. Generally, when a case is submitted to the trial court on agreed facts pursuant to Rule 263, as in this case, a trial court is not required to make written findings of fact. *See Port Arthur Independent School District v. Port Arthur Teachers Association,* 990 S.W.2d 955, 957 (Tex.App.-Beaumont 1999, pet. denied); *Harris County Appraisal District v. Transamerica Container Leasing, Inc.,* 920 S.W.2d 678, 680 (Tex. App.-Houston [1st Dist.] 1995, writ denied). Thus, the trial court did not err by refusing to make written findings of fact. Issue Two is overruled.

## THE TWO OFFENSES AROSE OUT OF THE SAME TRANSACTION

In Issue One, D.W.H. contends that the trial court erred by denying his petition for expunction. The District Attorney's Office responds that D.W.H. is not entitled to expunge the records of his arrest under Articles 55.01(a)(2) and 55.01(c) because the facts of the arrest he seeks to expunge are "bound up" with a federal offense to which he pled guilty. With respect to Article 55.01(a)(2), the District Attorney's

Office specifically argues that expunction is not available under the statute because Appellant pled guilty to an offense that arose from the same transaction as the no-billed offense.

 Expunction is neither a constitutional nor common-law right; rather, it is a statutory privilege. *In re A.G.*, 417 S.W.3d 652, 654 (Tex.App.-El Paso 2013, no pet.); *Travis County District Attorney v. M.M.*, 354 S.W.3d 920, 923 (Tex.App.-Austin 2011, no pet.). All provisions in a statutory cause of action are mandatory and exclusive and all conditions must be met before a person is entitled to expunction. *In re A.G.*, 417 S.W.3d at 654. The cause of action created by the expunction statute is civil rather than criminal in nature and the burden of proving compliance with the statutory requirements is on the petitioner. *Id.*

The first question to be decided is which version of the expunction statute applies in this case. The parties appeared to argue in the trial court that a prior version of Article 55.01 applied, but the Legislature amended Article 55.01 in 2011 and the enabling legislation provided that the amended version of the statute "applies to an expunction of arrest records and files for any criminal offense: (1) that occurred before, on, or after the effective date [September 1, 2011] of this Act." *See* Acts 2011, 82nd Leg., R.S., ch. 690, § 7, 2011 Tex. Gen.Laws 1651, 1655. Based on this language, the amended statute applies to expunction petitions filed on or after the effective date regardless of when the criminal offense occurred. *See In re M.C.*, 412 S.W.3d 48, 54 (Tex.App.-El Paso 2013, pet. filed); *Ex parte Mason*, No. 05–11–00046–CV, 2013 WL 1456632, at *1 n. 1 (Tex. App.-Dallas Apr. 9, 2013, pet. denied). While D.W.H.'s arrest occurred on June 11, 2008, he filed his petition for expunction after the effective date of the 2011

amendments to Article 55.01. Thus, the 2011 version of Article 55.01 applies in this case. Article 55.01(a)(2) provides, in relevant part, that:

(a) A person who has been placed under a custodial or noncustodial arrest for commission of either a felony or misdemeanor is entitled to have all records and files relating to the arrest expunged if:

 \* \* \*

(2) the person has been released and the charge, if any, has not resulted in a final conviction and is no longer pending and there was no court-ordered community supervision under Article 42.12 for the offense, unless the offense is a Class C misdemeanor, provided that:

(A) regardless of whether any statute of limitations exists for the offense and whether any limitations period for the offense has expired, an indictment or information charging the person with the commission of a misdemeanor offense based on the person's arrest or charging the person with the commission of any felony offense arising out of the same transaction for which the person was arrested:

(i) has not been presented against the person at any time following the arrest, and

 \* \* \*

(c) at least three years have elapsed from the date of arrest if the arrest for which the expunction was sought was for an offense punishable as a felony or if there was a felony charge arising out of the same transaction for which the person was arrested . . . .

TEX.CODE CRIM.PROC.ANN. art. 55.01(a)(2)(A) (West Supp.2014). D.W.H.'s burden of

proof included a requirement that he prove an indictment or information charging him with the commission of any felony *arising out of the same transaction for which he was arrested* had not been presented against him at any time following the arrest. *See* Tex.Code Crim.Proc.Ann. art. 55.01(a)(2)(A)(i).

 .Article 55.01 does not define the phrase "arising out of the same transaction." Statutory construction is a legal question which is reviewed *de novo.* *HCBeck, Ltd. v. Rice,* 284 S.W.3d 349, 352 (Tex.2009); *Montoya v. Nichirin–Flex, U.S.A., Inc.,* 417 S.W.3d 507, 512 (Tex. App.-El Paso 2013, no pet.). An appellate court's primary objective in construing any statute is to determine the Legislature's intent in enacting the particular provision, and to give that provision its intended effect. Tex.Gov't Code Ann. § 312.005 (West 2013) ("In interpreting a statute, a court shall diligently attempt to ascertain legislative intent and shall consider at all times the old law, the evil, and the remedy."); *McIntyre v. Ramirez,* 109 S.W.3d 741, 745 (Tex.2003); *Emeritus Corporation v. Blanco,* 355 S.W.3d 270, 276 (Tex. App.-El Paso 2011, pet. denied). When construing a statute, a court must begin with its language. *State v. Shumake,* 199 S.W.3d 279, 284 (Tex.2006). Generally, we accept the ordinary meaning of words and phrases used in a statute unless the words and phrases have acquired a technical or particular meaning whether by legislative definition or otherwise. Tex.Gov't Code Ann. §§ 311.011, 312.002 (West 2013); *Cities of Austin, Dallas, Fort Worth & Hereford v. Southwestern Bell Telephone Company,* 92 S.W.3d 434, 442 (Tex.2002). We may also consider the object to be attained by the statutes, the circumstances surrounding the statute's enactment, legislative history, former statutory and common law, and the consequences of a particular

construction. Tex.Gov't Code Ann. § 311.023 (West 2013).

The phrase "same transaction" is used in the Penal Code's definition of "criminal episode" which means "the commission of two or more offenses, regardless of whether the harm is directed toward or inflicted upon more than one person or item of property, under the following circumstances: (1) the offenses are committed pursuant to the same transaction or pursuant to two or more transactions that are connected or constitute a common scheme or plan; or (2) the offenses are the repeated commission of the same or similar offenses." *See* Tex.Penal Code Ann. § 3.01 (West 2011). Thus, a single "criminal episode," as defined in Section 3.01 includes the repeated commission of the same offense, any offenses committed according to a common scheme or plan, as well as all offenses that form a part of one criminal "transaction." *Cobb v. State,* 85 S.W.3d 258, 266 (Tex.Crim.App.2002).

Article 55.01(c) expressly refers to the Penal Code's definition of "criminal episode." *See* Tex.Code Crim.Proc.Ann. art. 55.01(c) (West Supp.2014) ("A court may not order the expunction of records and files relating to an arrest for an offense for which a person is subsequently acquitted, whether by the trial court, a court of appeals, or the court of criminal appeals, if the offense for which the person was acquitted arose out of a criminal episode, as defined by Section 3.01, Penal Code, and the person was convicted of or remains subject to prosecution for at least one other offense occurring during the criminal episode."). Article 55.01(a)(2)(A) does not refer to "criminal episode."

The Legislature used a similar phrase, "same criminal transaction," in Section 19.03(a)(7) of the Penal Code which provides that a person commits capital murder if he murders more than one person

during the same criminal transaction. TEX.PENAL CODE ANN. § 19.03(a)(7) (West Supp.2014). The Court of Criminal Appeals has defined the phrase "same criminal transaction" as used in Section 19.03(a)(7) as "a continuous and uninterrupted chain of conduct occurring over a very short period of time ... in a rapid sequence of unbroken events." *Williams v. State*, 301 S.W.3d 675, 684 (Tex.Crim. App.2009), *quoting Jackson v. State*, 17 S.W.3d 664, 669 (Tex.Crim.App.2000). The phrases "criminal episode" and "same criminal transaction" as used in Section 19.03 are not synonymous. *See Riemer v. State*, Nos. 02–12–00613, 614, 615–CR, 2013 WL 6565057, at *3 (Tex.App.-Fort Worth 2013, no pet.).

The Legislature is presumptively aware of the statutory definition of "criminal episode" and the judicial definition of "same criminal transaction." It chose to use neither of these phrases and instead included the phrase "arising out of the same transaction" in Article 55.01(a)(2)(A). Consequently, we conclude that the phrase used in the expunction statute must mean something different than either "criminal episode" or "same criminal transaction."

We are required to construe the expunction statute as a whole based on its plain language. Several appellate courts have held that Chapter 55's expunction scheme is arrest-based and expunction is not available for individual offenses arising from one arrest when the person is convicted of one offense arising out of the arrest. *See S.J. v. State*, 438 S.W.3d 838, 842–43 (Tex. App.-Fort Worth 2014, no pet.); *Texas Department of Public Safety v. Dicken*, 415 S.W.3d 476, 477–78 (Tex.App.-San Antonio 2013, no pet.); *Travis County District Attorney v. M.M.*, 354 S.W.3d 920, 926–27 (Tex.App.-Austin 2011, no pet.).

In *Dicken*, the petitioner was arrested for and later charged with driving while intoxicated and felony possession of a controlled substance. *Dicken*, 415 S.W.3d at 478. Dicken pled guilty to DWI and the possession offense was dismissed as part of the plea bargain. *Id.* Dicken sought and obtained expunction of the records related to the possession offense. *Id.* The San Antonio Court of Appeals rejected Dicken's argument that Article 55.01 is offense-based, and therefore, individual offenses are divisible for purposes of expunction. *Dicken*, 415 S.W.3d at 479. The court of appeals held that the plain language of Article 55.01(a)(2) requires a court to expunge all records and files relating to the arrest when there was no final conviction and no court-ordered community supervision, and it does not permit expunction of individual offenses stemming from the arrest. *Id.* at 479–80.

In *M.M.*, the petitioner was pulled over for traffic violations but refused to perform the field sobriety tests and resisted arrest when the officer placed her under arrest. *M.M.*, 354 S.W.3d at 921–22. She was charged by indictment with assault of a public servant, DWI, and resisting arrest. *Id.* at 922. M.M. entered a no contest plea to resisting arrest. *Id.* As part of the plea bargain, the State abandoned the DWI charge and the felony assault of a public servant was taken into consideration pursuant to Section 12.45 of the Penal Code. *Id.* M.M. subsequently obtained an expunction of the DWI and assault of a public servant charges arising from the same arrest. *M.M.*, 354 S.W.3d at 922. The Austin Court of Appeals held that expunction was not available for the records related to these two charges. *M.M.*, 354 S.W.3d at 923–24. It rejected M.M.'s argument that the unit of expunction is the criminal conduct that forms the basis for a criminal charge, not the criminal conduct that forms the basis for an arrest, which could include several separate criminal

charges. *Id.* at 924. Additionally, the court was not persuaded by M.M.'s assertion that the Legislature's use of the term "the arrest" refers to each charge arising from the arrest, and therefore, her DWI and assault charges could be divorced from the resisting arrest charge and individually expunged. *M.M.*, 354 S.W.3d at 924. Based on the plain language of the expunction statute, the court concluded that the statute only speaks to expunging the records relating to an arrest, not to individual records relating to a charge arising from an arrest. *Id.*

The Fort Worth Court of Appeals likewise held in *S.J. v. State*, 438 S.W.3d at 843–44, that Article 55.01 is arrest-based, and therefore, individual charges arising from an arrest are not subject to expunction. *Id.* This decision is significant because we are required to decide this transfer case in accordance with the precedent of the Second Court of Appeals by Tex. R.App.P. 41.3. Under *S.J.* and the cases on which it relies, D.W.H. is not entitled to an expunction of any individual charges arising out of his arrest for improper relationship between an educator and student.

■ The agreed facts establish that the federal weapons charge arises directly out of Appellant's arrest for improper relationship between an educator and student. The Saginaw P.D. received a report from B.M.'s parents that their daughter was missing and they had found her vehicle in front of D.W.H.'s residence. They had been suspicious of the relationship between D.W.H. and their daughter due to the frequency of their contact both during and after school. When B.M.'s parents went to D.W.H.'s home to locate B.M., D.W.H. opened the door while holding a rifle. He also refused to let police officers look in the bedrooms of his home for B.M. Despite D.W.H. repeatedly denying to the parents and police that B.M. was in his home, police officers observed her exit the residence at 6:00 a.m. on the morning of June 11, 2008, and she told them that she had been in the home that evening. She also admitted that D.W.H. had kissed her and touched her breast while engaging in other inappropriate physical contact with her. Based on the facts gathered during their investigation, the police officers obtained an arrest warrant for D.W.H. and search warrants for his home, a computer, and memory cards. Those warrants were executed at 11:15 p.m. that same evening, but the officers were not able to open one of the gun safes until the following day, June 12, 2008. They found prohibited weapons inside of that gun safe. At that point, ATF became involved in the case and D.W.H. was later convicted of possessing an unregistered weapon.

Under Article 55.01(a)(2)(A), it was D.W.H.'s burden to prove that the federal weapons charge did not arise out of his arrest on June 11, 2008 for improper relationship between an educator and student. The evidence demonstrates that the unregistered firearms were discovered in D.W.H.'s home as a direct result of the officers executing search warrants related to the state charge. We find that the agreed evidence demonstrates that D.W.H.'s charge and conviction of possessing illegal firearms arises out of the same transaction as his arrest for improper relationship between educator and student. Consequently, D.W.H. failed to establish that an indictment or information charging him with the commission of any felony arising out of the same transaction for which he was arrested has not been presented against him at any time following the June 11, 2008 arrest. This showing is an essential element of a cause of action for expunction. Because D.W.H. failed to carry his burden of proof under Article 55.01(a)(2)(A) and the agreed facts show

that the two offenses arise out of the same transaction, we conclude that the trial court did not abuse its discretion by denying D.W.H.'s petition. Issue One is overruled. Having overruled both issues, the judgment of the trial court is affirmed.

RODRIGUEZ, J. (Dissenting).

YVONNE T. RODRIGUEZ, Justice, dissenting.

I respectfully dissent because D.W.H.'s arrest of the possession of the unregistered firearm did not directly arise from his arrest of an improper relationship between educator and student. The facts demonstrate D.W.H.'s arrests were not part of the same transaction, and I believe, are too attenuated to be related and thereby, cannot bar the expunction.

## FACTUAL AND PROCEDURAL BACKGROUND

This case began in the early morning hours of June 11, 2008 when the parents of B.M.[1], a seventeen-year-old student, called the Saginaw Police Department to report B.M. was missing. The parents also informed the officers "they had made contact with [D.W.H.], who had opened the door while holding a rifle ... [and] told them [B.M.] was not there."

That evening, police officers obtained and executed a warrant for D.W.H.'s arrest and a warrant to seize certain items from his home. While executing the search warrant, police officers encountered two safes in D.W.H.'s bedroom. The next day, police officers opened one of the safes and discovered, among other items, an inert hand grenade and a "short barrel, fully automatic" "AR15/M16 style weapon" "illegal to possess under federal law without federal registration or licensing." Officers suspended their search and contacted the

1. B.M. is a pseudonym.

Bureau of Alcohol, Tobacco, and Firearms (hereinafter, "ATF"). During ATF's investigation, agents seized the items in the safe and additional contraband from D.W.H.'s home.

D.W.H. was charged with two separate offenses under state and federal law stemming from these events. The Tarrant County Criminal District Attorney (hereinafter, "District Attorney") charged D.W.H. with the offense of improper relationship between an educator and student. This complaint, however, was ultimately no-billed by the grand jury eight months later on February 12, 2009. The United States Attorney's Office subsequently charged D.W.H. with the offense of possession of an unregistered firearm on February 23, 2009. D.W.H. pled guilty to the federal offense, and he was placed on probation.

### Applicable Law

The right to an expunction is a statutory right, and a petitioner is entitled to expunction only when all of the statutory conditions have been met. *S.J. v. State,* 438 S.W.3d 838, 841 (Tex.App.-Fort Worth 2014, no pet.); *In re A.G.,* 388 S.W.3d 759, 761 (Tex.App.-El Paso 2012, no pet.). If the petitioner meets his evidentiary burden, the trial court must grant the expunction petition. *In re A.G.,* 388 S.W.3d at 761.

D.W.H. sought expunction under Article 55.01(a)(2) of the Texas Code of Criminal Procedure. This statute provides, in relevant part, that:

(a) A person who has been placed under a custodial or noncustodial arrest for commission of either a felony or misdemeanor is entitled to have all records and files relating to the arrest expunged if:

. . .

(2) the person has been released and the charge, if any, has not resulted in a final conviction and is no longer pending and there was no court-ordered community supervision under Article 42.12 for the offense, unless the offense is a Class C misdemeanor, provided that:

(A) regardless of whether any statute of limitations exists for the offense and whether any limitations period for the offense has expired, *an indictment or information charging the person with the commission of a misdemeanor offense based on the person's arrest or charging the person with the commission of any felony offense arising out of the same transaction for which the person was arrested:*

(i) has not been presented against the person at any time following the arrest, and:

. . .

(c) at least three years have elapsed from the date of arrest if the arrest for which the expunction was sought was for an offense punishable as a felony *or if there was a felony charge arising out of the same transaction for which the person was arrested* . . . . [Emphasis added].

TEX.CODE CRIM.PROC.ANN. art. 55.01(a)(2)(A) (West Supp.2014).

### Discussion

The question on appeal is whether D.W.H. proved the information charging him with possession of an unregistered firearm did not arise from the same transaction as his arrest for having an improper

relationship with B.M. D.W.H. argues "the two offenses cannot be part of the same 'transaction' just because they were both connected with the same 'investigation.' " I agree.

The phrase "same transaction" is not defined in Article 55.01 or, for that matter, in any other provision of Chapter 55 of the Code—the expunction statute. Where the legislature has not defined a term, it is within the province of the courts to construe its meaning, and in construing a statute, a court's primary objective is to determine and give effect. to the legislature's intent.[2] *S.J.*, 438 S.W.3d at 843. To discern that intent, we look at the statutory language first, interpreting words and phrases in accordance with their ordinary or natural meaning in the context in which they arise and in the context of the whole statute rather than their isolated provisions. *Id.* This principle of statutory constitution has been adopted by the Code of Criminal Procedure. *See* TEX.CODE CRIM. PROC.ANN. art. 3.01 (West 2005) ("All words, phrases and terms used in this Code are to be taken and understood in their usual acceptation in common language, except where specifically defined."). More importantly, the phrase "same transaction" used elsewhere in the Code—Article 28.061—has been judicially defined. *See Kalish v. State,* 662 S.W.2d 595 (Tex. Crim.App.1983).

"In construing a statutory word or phrase, the court may take into consideration the meaning of the same or similar language used elsewhere in the act or in another act of similar nature." *L & M–Surco Mfg., Inc. v. Winn Tile Co.,* 580 S.W.2d 920, 926 (Tex.Civ.App.-Tyler 1979, writ dism'd). "Where the same or a simi-

---

**2.** Statutory construction is a question of law subject to *de novo* review. *HCBeck, Ltd. v. Rice,* 284 S.W.3d 349, 352 (Tex.2009); *Mon-* *toya v. Nichirin–Flex, U.S.A., Inc.,* 417 S.W.3d 507, 512 (Tex.App.-El Paso 2013, no pet.).

lar term is used in the same connection in different statutes, it will be given the same meaning in one that it has in another, unless there is something to indicate that a different meaning was intended." *Id.* "This rule applies with particular force where the meaning of a word as used in one act is clear or has been judicially determined, and the same word is subsequently used in another act pertaining to the same subject." *Id.*

In *Kalish,* the court considered whether the separate offenses of public intoxication and possession of cocaine "arose out of the same transaction" for purposes of the Speedy Trial Act. There, the defendant was charged with these offenses following a traffic stop but succeeded in having the intoxication charge dismissed. *Kalish,* 662 S.W.2d at 597. Invoking the version of Article 28.061 applicable then,[3] the defendant moved to set aside the possession charge on the basis that his discharge from the intoxication charge barred the State from prosecuting him on the possession charge because that offense "ar[ose] out of the same transaction." *Id.* at 596 n. 1, 597. The trial court denied the motion, and the court of appeals affirmed the defendant's conviction, concluding that the two offenses "were not of the same transaction." *Id.* at 597.

The court disagreed:

We hold that when a person is ... taken into custody by a peace officer, all such chargeable voluntary conduct in which the person was then and there engaged, constituting an offense continuing in nature, arises out of the same transaction. Accordingly, given the facts and circumstances ... we find that offense of possession of cocaine and the offense of public intoxication, being committed contemporaneously by appellant, were of the same transaction.

*Id.* at 600. The court reached this result based on its conclusion that possession is similar to public intoxication in that each "becomes a criminal transaction when one is found in that condition." *Kalish,* 662 S.W.2d at 600. The rationale underlying the court's conclusion suggests a broad rule that not all criminal charges arise from an arrest if the offenses become criminal transactions at discrete moments in time not connected temporally:

All criminal offenses involve voluntarily engaging in conduct, including an act, an omission, or possession ... and acts are manifested by a bodily movement ... whereas a voluntary 'act' of possession is something distinct from both act and omission.... When one voluntarily engages in criminal conduct consisting of a bodily movement, generally it produces a 'victim' and thus becomes a transaction. That kind of criminal

3. At that time, Article 28.061 provided that:

If a motion to set aside an indictment information, or complaint for failure to provide a speedy trial as required by Article 32A.02 is sustained, the court shall discharge the defendant. A discharge under this article is a bar to any further prosecution for the offense discharged or for any other offense arising out of the same transaction.

Act of June 16, 1977, 65th Leg., R.S., ch. 787, § 4, 1977 Tex.Gen.Laws 1970, 1972. In its current incarnation, Article 28.061 provides that:

If a motion to set aside an indictment, information, or complaint for failure to provide a speedy trial is sustained, the court shall discharge the defendant. A discharge under this article is a bar to any further prosecution for the offense discharged and for any other offense arising out of the same transaction, other than an offense of a higher grade that the attorney representing the state and prosecuting the offense that was discharged does not have the primary duty to prosecute.

TEX.CODE CRIM PROC.ANN. art. 28.061 (West 2006).

transaction terminates with cessation of conduct—ordinarily in a relatively brief period of time. However, an 'act' of possession is usually 'victimless,' and is not considered a criminal transaction until it is discerned or discovered by another, ordinarily upon arrest, search or seizure . . . .

*Id.*, internal citations and footnotes omitted.

Based on the principles of statutory construction articulated above and the rationale underlying the result in *Kalish,* I would conclude the federal offense of possession of an unregistered firearm did not "arise out of the same transaction" for which D.W.H. was arrested. It is clear that when B.M. visited with D.W.H. at his home overnight, this "act" became the criminal transaction involving the offense of an improper relationship between teacher and student. The transaction terminated shortly thereafter when D.W.H. ceased his conduct. Conversely, it is clear that when D.W.H. was arrested, the "act" of possessing an unregistered firearm had not yet ripened into criminal transaction because the firearm was not found in its unregistered state until it was seized the next day by ATF agents. Moreover, the agreed facts do not establish that the "rifle" D.W.H. displayed to B.M.'s parents was the unregistered weapon. Thus, given the differences in the nature of the voluntary conduct underlying each "act," the two acts are distinct from each other and became criminal transactions at discrete moments in time not connected temporally. In other words, both offenses were not complete at the time of the arrest. Accordingly, the criminal charges stemming from D.W.H.'s arrest were not of the same transaction.

My conclusion comports with the plain, grammatical meaning of the term "transaction," "a word of flexible meaning."

*Moore v. New York Cotton Exch.,* 270 U.S. 593, 610, 46 S.Ct. 367, 371, 70 L.Ed. 750 (1926) (defining "transaction" in the context of a compulsory counterclaim). The dictionary defines "transaction" as "2 a: an act, process, or instance of transacting b: a communicative action or activity involving two parties or things that reciprocally affect or influence each other." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 1327 (11th ed. 2003). "Transact," in turn, is a transitive verb meaning "to carry to completion." *Id.* Thus, in common acceptation, the term "transaction" in the phrase "a felony charge [or offense] arising out of the same transaction for which the person was arrested" must be understood to mean an act, process, or instance of carrying *to completion* a criminal offense at the time of arrest.

My conclusion likewise comports with the expunction statute's salutary purpose, a factor we may consider in ascertaining the legislature's intent. *See* TEX.GOV'T CODE ANN. § 311.023 (West 2013). The traditional and primary purpose of the expunction statute is to allow persons to remove arrest records related to wrongful charges. *S.J.,* 438 S.W.3d at 843. The statute's salutary effect, like that of the statutory provision in issue in *Kalish,* depends on the nexus between the arrest and the offenses arising from it. Under Article 28.061, the failure to provide a speedy trial for one offense bars prosecution for all offenses arising out of the same transaction. Under Article 55.01(a)(2)(A), the presentment of a charging instrument for a felony offense arising out of the same transaction for which the person was arrested bars expunction of all records related to the arrest. Thus, in concluding that the criminal charges stemming from D.W.H.'s arrest were not of the same transaction because both offenses were not complete at the time of the arrest, I be-

lieve we would adhere to the expunction statute's arrest-based scheme.[4] *S.J.*, 438 S.W.3d at 844–46 (concluding expunction statute's scheme is arrest-based rather than offense-based and, consequently, does not permit expunction of individual offenses stemming from an arrest); *Tex. Dep't of Pub. Safety v. Dicken*, 415 S.W.3d 476, 479–80 (Tex.App.-San Antonio 2013, no pet.) (same); *Travis Cnty. Dist. Attorney v. M.M.*, 354 S.W.3d 920, 924, 927 (Tex.App.-Austin 2011, no pet.) (same).

The District Attorney asserts the two offenses arose out of the same transaction because they were the offspring of the same investigation. But the District Attorney cites no authority, and I have found none, for the proposition that criminal offenses arise out of the same transaction for which a person is arrested if the nexus between or among the offenses is evidence for each underlying offense discovered in the same investigation. By advancing this argument, the District Attorney, in essence, is urging us to adopt a multi-transaction, offense-based approach. To adopt that approach in my view would render meaningless the arrest-based, same transaction construction of the expunction statute and lead to absurd results that the legislature could not possibly have intended. *See Tex. Dep't of Protective & Regulatory Servs. v. Mega Child Care, Inc.*, 145 S.W.3d 170, 177 (Tex.2004) (noting that when statutory text is unambiguous, courts must adopt the interpretation supported by the statute's plain language unless that interpretation would lead to absurd results).

The District Attorney also asserts D.W.H. failed to prove Article 55.01(c) did not bar an expunction under these circumstances. *See* Tex.Code Crim.Proc.Ann. art.

55.01(c)(West Supp.2014) (barring the expunction of records where a person is acquitted for an offense and still "remains subject to prosecution" for at least one other offense committed during the same "criminal episode," as defined by Section 3.01 of the Texas Penal Code).

"A single 'criminal episode,' as defined in Penal Code section 3.01, includes the repeated commission of the same offense, any offenses committed according to a common scheme or plan, as well as all offenses that form a part of one criminal 'transaction.'" *Cobb v. State*, 85 S.W.3d 258, 266 (Tex.Crim.App.2002), *cert. denied*, 537 U.S. 1195, 123 S.Ct. 1256, 154 L.Ed.2d 1032 (2003) (*citing* Tex.Penal Code Ann. § 3.01 (West Supp.2014)). A "criminal transaction," on the other hand, is "a continuous and uninterrupted chain of conduct occurring over a very short period of time ... in a rapid sequence of unbroken events." *Smith v. State*, 297 S.W.3d 260, 275 (Tex.Crim.App.2009), *cert. denied*, 559 U.S. 975, 130 S.Ct. 1689, 176 L.Ed.2d 186 (2010) (internal citations and quotation marks omitted). Clearly, the events in this case cannot be categorized as the same or similar offense or offenses committed to a common scheme or plan. Nor can they be rightfully considered as one continuous and uninterrupted chain of conduct occurring over a very short period of time in a rapid sequence of unbroken events. The two acts were of a different nature, were separated by more than 24 hours, and—if linked in any manner—were interrupted by D.W.H.'s arrest.

Nonetheless, the District attorney maintains "the offenses were part of one 'connected' 'transaction' as explained in [Section 3.01]" "[b]ecause of the interlaced nature of the investigation." But the

---

4. A person is arrested when he is "actually placed under restraint or taken into custody by an officer or person executing a warrant of arrest, or by an officer or person arresting without a warrant." Tex.Code Crim.Proc.Ann. art. 15.22 (West 2005).

premise for this argument, *i.e.*, that offenses connected by a single investigation comprise a criminal transaction, is the same one the District Attorney, I believe, erroneously relied on in arguing that expunction was unavailable under Article 55.01(a)(2)(A). Accordingly, I would reject the State's argument for the reasons identified above in my discussion of Article 55.01(a)(2)(A).

In an alternate argument, the District Attorney claims D.W.H. "wants nothing less than the purging of arrest records which resulted in, and were inextricably entwined with, a federal weapons conviction." According to the District Attorney, "[t]he expunction statute simply does not contemplate the eradication of arrest records when those records are at the heart of a federal investigation, federal criminal offense, and conviction in federal court." I agree expunction is unavailable when "it is apparent that the dismissed and pled-to charges relate to a single instance of criminal conduct ...." *S.J.*, 438 S.W.3d at 846. But the charges here do not relate to a single instance of criminal conduct. I would find that expunction is therefore not precluded under the facts of this case.

In light of the foregoing, I would sustain Appellant's first issue and find D.W.H. has shown he is entitled to expunction under Article 55.01.